Argued and submitted September 15, conviction affirmed; sentence vacated and remanded for resentencing December 16, 1998

## STATE OF OREGON,
*Respondent,*

*v.*

## TODD DANIEL DAVILLA,
*Appellant.*

(92-0004; CA A91602)

972 P2d 902

Steven H. Gorham argued the cause and filed the brief for appellant.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendant appeals from the 1,394-month sentence imposed on resentencing on his murder conviction. ORS 138.050. We affirm the conviction and remand for vacation of the sentence and for resentencing.

Defendant was 16 years old on August 13, 1991, when he attempted to rape a woman and then murdered her. After the state filed a motion to remand the case from juvenile court to circuit court, defendant did not contest the remand and agreed to plead guilty to murder, burglary and attempted rape.[1] Defendant was remanded and pleaded guilty. He received, in part, a sentence of life imprisonment on the murder conviction under ORS 163.115(3)(a). Defendant appealed that sentence. We held that under ORS 138.222(2)(d) and *State v. Adams*, 315 Or 359, 847 P2d 397 (1993), we could not review his claimed errors on direct appeal. *State v. Davilla*, 121 Or App 583, 586, 855 P2d 1160, *adhered to on recons* 124 Or App 87, 89, 860 P2d 894 (1993), *rev den* 318 Or 351 (1994).

Defendant then sought post-conviction relief, and the post-conviction relief court granted partial relief, vacating the life imprisonment sentence based on *State v. Morgan*, 316 Or 553, 856 P2d 612 (1993). Defendant appealed the denial of his other claims for relief, and we affirmed without opinion.[2] *Davilla v. Zenon*, 147 Or App 241, 932 P2d 1217, *rev den* 325 Or 403 (1997). At resentencing before the trial court, defendant moved to be returned to juvenile court and to be allowed to rescind his guilty plea. The trial court denied those motions and sentenced defendant to a departure sentence under the guidelines of 1,394 months (approximately 116 years) incarceration on the murder conviction. Defendant appeals that sentence.

Defendant makes the following assignments of error: first, that imposing a sentence under the sentencing

---

[1] Although defendant's plea agreement made no recommendations or agreement on the murder sentence, it does include that the, "Parties agree that the following Uniform Sentencing Guidelines Grid Blocks apply: Murder, 11-I [.]" The 11-I block allows for a 120-21 month presumptive sentence.

[2] Those claims included the unconstitutionality of defendant's remand from juvenile court, his guilty plea, and the imposition of consecutive sentences.

guidelines violates statutory protections for juveniles; second, that his sentence is unconstitutionally disproportionate under Article I, section 16, of the Oregon Constitution; third, that his sentence is cruel and unusual punishment under Article I, section 15, of the Oregon Constitution; fourth, that there were not substantial and compelling reasons for a departure sentence under the guidelines; and, fifth, that the court failed to apply the 200 percent rule limiting departure sentences. Finally, in his sixth assignment of error, defendant argues that the resentencing court erred in not allowing the withdrawal of the remand order from juvenile court and his plea of guilty to murder.

Defendant's sixth assignment of error incorporates issues that defendant has previously raised on post-conviction relief and that have been decided against him, as does his argument that the trial court erred by imposing consecutive sentences. *Davilla v. Zenon,* 147 Or App at 241. Moreover, having pled guilty, defendant's appeal is limited to challenges to his sentence. ORS 138.050.

We turn to the issue of whether defendant's sentence for murder exceeds the maximum allowable by law. ORS 138.050(1)(a).[3] Defendant argues that ORS 161.620 provides statutory protections for juveniles that make sentencing under either ORS 163.115(3) (1989) or the guidelines unlawful.[4] In 1991, when defendant committed his crimes, ORS 161.620 (1989) provided:

"Notwithstanding any other provision of law, a sentence imposed upon any person remanded from the juvenile court under ORS 419.533 shall not include any sentence of death or life imprisonment without the possibility of release or

---

[3] *See also* 138.222(4) ("In any appeal, the appellate court may review a claim that: (a) The sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence[.]").

[4] Defendant acknowledges that at various stages of the resentencing hearing, he argued different positions concerning the applicability of the sentencing guidelines to his case. As the state points out in its brief, defense counsel said during the resentencing hearing that, "the only legal sentence in this case is a guideline sentence. The state and I agree on that." Nonetheless, both in written memoranda and in arguments before the trial court, defendant preserved the issue raised in his first assignment of error, and the court made a ruling on the applicability of the guidelines. Therefore, we will address the merits of defendant's claim that the sentencing guidelines cannot be lawfully applied to him.

parole nor imposition of any mandatory minimum sentence except that a mandatory minimum sentence under ORS 163.105 (1)(c) shall be imposed where the person was 17 years of age at the time of the offense."

Oregon Laws 1989, chapter 720, provided for a sentence of life imprisonment without the possibility of release or parole for adult defendants while simultaneously amending ORS 161.620 to ensure that remanded juveniles did not receive "true life" sentences. We conclude from the plain language of the statutes that the legislature intended that remanded juveniles not be sentenced to imprisonment for the duration of their lives without having the possibility of release. A departure sentence of 116 years is in practical effect imprisonment for life without the possibility of release or parole. Therefore, we conclude that defendant's sentence is in violation of ORS 161.620 and that this matter must be remanded for resentencing.

In that regard, defendant argues that there is no statutory authority under which the trial court could impose a lawful sentence for his conviction of murder. He concludes that he must be remanded to juvenile court for purposes of disposition. We agree with him that ORS 163.115(3) is not available as authority to the court for sentencing in this case. ORS 163.115(3) (1989) provides:

"(a)   A person convicted of murder shall be punished by imprisonment for life.

"(b)   When a defendant is convicted of murder under this section, the court shall order that the defendant shall be confined for a minimum of 10 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(c)   When a defendant is convicted of murder under this section, the court, in addition to the minimum required by paragraph (b) of this subsection, may order that the defendant shall be confined for a minimum term of up to an additional 15 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp."

In 1992, the Supreme Court examined ORS 161.620 and the legislature's intent in order to interpret the phrase

"mandatory minimum sentence" in the statute. *State v. Jones*, 315 Or 225, 844 P2d 188 (1992). The issue in *Jones* was whether that phrase is limited to statutorily mandated minimum sentences or whether it also includes minimum sentences imposed in the discretion of the sentencing court. The court concluded that:

> "The purpose of ORS 161.620 is to give trial judges flexibility in sentencing most remanded juveniles. The reading that is most consistent with that purpose is that a 'minimum sentence' is 'mandatory' if it gives the sentencing judge no flexibility, but requires the judge statutorily to impose a specified minimum sentence. That reading is straightforward, it gives meaning to all words in ORS 161.620, and it comports with the overall purpose of the statute." *Jones*, 315 Or at 230.

As a result, the court concluded that the trial court erred in imposing a 25-year mandated, minimum sentence under ORS 163.115(3)(b) and (c) on a remanded juvenile convicted of murder and robbery. *Id.* at 231-32. A year later, the Supreme Court held that as a result of legislative changes in 1989, a person convicted of murder could no longer be given an indeterminate sentence for life under ORS 163.115(3)(a). *Morgan*, 316 Or at 560. The statute and the guidelines permit the imposition of a determinate sentence for murder with the availability of post-prison supervision for life. Under the 1989 statutes, the combined holdings in *Jones* and *Morgan* mean that a juvenile remanded to adult court cannot receive a mandatory minimum sentence or an indeterminate sentence for life.[5]

■    Defendant argues that the sentencing guidelines also cannot be applied to him because, as a "determinate sentencing scheme," the guidelines equate to mandatory minimum sentences prohibited by ORS 161.620. The state responds that the legislature made no exception for remanded juveniles in the application of the guidelines and that a "determinate sentence" under the guidelines is not a

---

[5] The legislature has since amended ORS 163.115(3)(a). Currently, ORS 163.115(5)(a) and (b) provide for an indeterminate life sentence with a 25-year minimum. In *State v. Francis*, 154 Or App 486, 962 P2d 45, *rev den* 327 Or 554 (1998), we held that the legislature intended that the amendment reinstate the possibility of an indeterminate life sentence for a murder conviction.

"mandatory minimum sentence" within the meaning of the statute.

In *Jones*, the court defined a "mandatory minimum sentence" to be not merely a determinate sentence, but one that trial courts are statutorily required to impose. *See also Morgan*, 316 Or at 557 (holding that "a determinate sentence" under ORS 137.637 is one that is for a fixed period of time). While a presumptive sentence or a departure sentence under the guidelines imposes a determinative period of incarceration, the court retains some flexibility in determining the length of the sentence by the use of departure factors. The court can make findings that allow an upward or downward departure or can accept a sentencing agreement made between the state and the defendant in light of the presumptive sentence. OAR 253-07-003 through 253-07-005 (1989); OAR 253-08-001 through 253-08-007 (1989). In *Jones,* the court emphasized that ORS 161.620 focuses on whether there are options available to the sentencing court and not on whether the sentence is for a fixed period. 315 Or at 230-31. Those differences illustrate that a determinate sentence under the guidelines is not a "mandatory minimum sentence" within the meaning of ORS 161.620, and accordingly, we reject defendant's argument that he cannot be sentenced under the guidelines.

■■  On remand, the trial court is to impose sentence under the guidelines.[6] We note that Article I, section 16, imposes a ceiling on the sentence that the court can impose.[7]

---

[6] ORS 137.120(2) (1989) provides:

"Whenever *any person* is convicted of a felony committed on or after November 1, 1989, the court shall impose sentence in accordance with rules of the State Sentencing Guidelines Board." (Emphasis added.)

ORS 137.637 (1989) provides:

"When a determinate sentence of imprisonment is required or authorized by statute, the sentence imposed shall be the determinate sentence or the presumptive sentence as provided by the rules of the State Sentencing Guidelines Board, whichever is longer."

Together, those statutes support the state's argument that the guidelines were meant to apply to all persons convicted of felonies, including juveniles.

[7] Article I, section 16, of the Oregon Constitution, provides, in part:

"Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

The state's brief asserts:

A statutory scheme under which defendant would receive a more severe sentence for murder than he would for aggravated murder violates Article I, section 16. *State v. Shumway*, 291 Or 153, 164, 630 P2d 796 (1981). For crimes committed in 1991, three possible penalties for adults convicted of aggravated murder existed: death, life imprisonment without the possibility of release or parole, and life imprisonment with a minimum of 30 years' confinement. ORS 163.105.[8] Sentencing for aggravated murder is provided for solely by

---

"Defendant does not cite any place in the record where he argued that the sentence imposed was unconstitutionally disproportionate, and none is apparent. It is not clear that the trial court judge ever ruled on this allegation."

We disagree with the state's assertion because the record is replete with instances where this issue is presented.

[8] ORS 163.105 (1989) provided:

"Notwithstanding the provisions of ORS chapter 144, ORS 421.165 and 421.450 to 421.490:

"(1)(a) When a defendant is convicted of aggravated murder as defined by ORS 163.095, the defendant shall be sentenced, pursuant to ORS 163.150, to death, life imprisonment without the possibility of release or parole or life imprisonment.

"(b) A person sentenced to life imprisonment without the possibility of release or parole under this section shall not have that sentence suspended, deferred or commuted by any judicial officer, and the State Board of Parole and Post-Prison Supervision may not parole the prisoner nor reduce the period of confinement in any manner whatsoever. The Department of Corrections or any executive official may not permit the prisoner to participate in any sort of release or furlough program.

"(c) If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(2) *At any time after 20 years* from the date of imposition of a minimum period of confinement pursuant to paragraph (c) of subsection (1) of this section, the State Board of Parole and Post-Prison Supervision, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. The proceeding shall be conducted in the manner prescribed for a contested case hearing under ORS 183.310 to 183.550 except that:

"(a) The prisoner shall have the burden of proving by a preponderance of the evidence the likelihood of rehabilitation within a reasonable period of time; and

"(b) The prisoner shall have the right, if the prisoner is without sufficient funds to employ an attorney, to be represented by legal counsel, appointed by the board, at board expense.

ORS 163.105 and is not covered under the guidelines. OAR 253-04-003 (1989). Under ORS 161.620 and ORS 163.105 (1989), a 17 year old convicted of aggravated murder could receive no less a sentence than a life imprisonment sentence with a 20-year minimum. It follows that a 16 year old convicted of murder could receive no greater sentence under Article I, section 16. *See also* OAR 253-08-004 (1989); OAR 253-08-003 (1993); OAR-213-08-003.[9]

In light of our disposition we do not reach defendant's remaining assignments of error.

Conviction for murder affirmed. Sentence vacated and remanded for resentencing.

---

"(3) *If, upon hearing all of the evidence, the board, upon a unanimous vote of all of five members, finds that the prisoner is capable of rehabilitation* and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, *it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release.* Otherwise the board shall deny the relief sought in the petition.

"(4) Not less than two years after the denial of the relief sought in a petition under this section, the prisoner may petition again for a change in the terms of confinement. Further petitions for a change may be filed at intervals of not less than two years thereafter." (Emphasis added.)

[9] OAR 253-08-004 (1989) provided:

"(1) A durational departure from a presumptive incarceration term shall not total more than double the maximum duration of the presumptive incarceration term.

"(2) The limit on durational departures established by section (1) of this rule does not apply to any sentence imposed for a conviction of ORS 163.115 Murder."

OAR 253-08-003 (1993) provided, in part:

"(2) A durational departure from a presumptive prison term shall not total more than double the maximum duration of the presumptive prison term. In no case may the sentence exceed the statutory maximum indeterminate sentence described in ORS 161.605.

"(3) The limit on durational departures established by section (2) of this rule does not apply to the indeterminate sentence imposed on a dangerous offender under ORS 161.725 and 161.737."

The limitations on departures for murder continue to be in existence today for crimes committed after November 1, 1993. OAR 213-08-003.