Argued and submitted December 23, 1999, reversed and remanded for
resentencing July 26, 2000

# STATE OF OREGON,
*Respondent,*

*v.*

# TRACEY EARL KOCH,
*Appellant.*

## (971041; CA A101095)

7 P3d 769

Daniel Q. O'Dell, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Jennifer Scott Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant pleaded guilty to two counts of first-degree forgery. ORS 165.013.[1] He appeals from consecutive sentences of 24 months for each count, followed by a one-year term of post-prison supervision. We reverse.

In October 1996, defendant deposited into his bank account a $1,000 check that he had endorsed and that had belonged to a recently deceased person. In December 1996, he deposited another $1,000 forged check belonging to that person. Eventually, defendant was convicted of forgery as the result of his conduct. His convictions required sentencing under OAR chapter 213 (1996). ORS 137.010(1). In the plea agreement that led to his convictions, defendant and the prosecutor agreed that, for a Level 3 forgery, the appropriate crime seriousness ranking was a 3. OAR 213-004-0002(2) (1996); OAR ch 213, app 3 (1996).[2] They also agreed that the criminal history category was a "B." OAR 213-004-0007

---

[1] ORS 165.013 provides, in part:

"(1) A person commits the crime of forgery in the first degree if the person violates ORS 165.007 and the written instrument is or purports to be any of the following:

"* * * * *

"(d) A check for $750 or more, a credit card purchase slip for $750 or more, or a combination of checks and credit card purchase slips that, in the aggregate, total $750 or more, or any other commercial instrument or other document that does or may evidence, create, transfer, alter, terminate or otherwise affect a legal right, interest, obligation or status[.]"

ORS 165.007(1) provides:

"A person commits the crime of forgery in the second degree if, with intent to injure or defraud, the person:

"(a) Falsely makes, completes or alters a written instrument; or

"(b) Utters a written instrument which the person knows to be forged."

[2] OAR 213-004-0002(2)(1996) provides:

"When the statutory definition of an offense includes a broad range of criminal conduct, the offense may be subclassified factually in more than one crime category to capture the full range of criminal conduct covered by the statutory offense. The list of subclassified offenses is set forth as Appendix 3."

OAR chapter 213, division 4, Appendix 3 (1996) provides that subcategories shall be used for property offenses including first-degree forgery. Forgeries where the face value of the instrument is $5,000 or more but less than $10,000 must be ranked in crime category 4, whereas forgeries where the face value of the instrument is $1,000 or more but less than $5,000 must be ranked in crime category 3.

(1996). The relevant presumptive sentence for a 3B conviction provided for a two-year term of probation. OAR 213-005-0008(1)(b) (1996); OAR ch 213, app 3 (1996). However, the court found four aggravating factors at sentencing: persistent involvement in criminal activity; multiple prior probation failures; a particularly vulnerable victim; and that defendant was under post-prison supervision at the time of the offenses. Ruling that any two of those factors would suffice as grounds for a dispositional and durational departure, the court sentenced defendant to 24 months of incarceration for each conviction in accordance with OAR 213-008-0001 through OAR 213-008-0005 (1996). In addition, the court ordered that the sentences be served consecutively, after finding that the offenses occurred on different dates and were not part of the same criminal episode. Also, the court imposed a one-year term of post-prison supervision as required by OAR 213-005-0002(2)(a) (1996).

■■    On appeal, defendant argues that his sentences violate the proportionality requirement of Article I, section 16, of the Oregon Constitution.[3] He asserts that, if he had committed Level 4 forgeries, the maximum durational departure sentence with a "B" criminal history score would have been 18 months in prison. Article I, section 16, prohibits the imposition of a sentence for a lesser offense that is greater than that available for a more serious offense. *State v. Turner*, 296 Or 451, 456, 676 P2d 873 (1984); *Merrill v. Gladden*, 216 Or 460, 464, 337 P2d 774 (1959); *Cannon v. Gladden*, 203 Or 629, 631-33, 281 P2d 233 (1955).

The parties agree that the presumptive sentence for first-degree forgery involving amounts over $5,000 was eight to nine months of incarceration as found in gridblock 4B. OAR ch 213, apps 1 and 3 (1996). A sentencing court could impose a maximum of 18 months of incarceration for that offense after finding grounds for departure. OAR 213-008-0003(2) (1996). In addition, the required term of post-prison

---

[3] Article I, section 16, of the Oregon Constitution, provides, in part:

"Excessive bail shall not be required, nor excessive fines imposed. Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

supervision was two years. OAR 213-005-0002(2)(b) (1996). The state asserts that:

> "A sentence is not disproportionate whenever a longer sentence *may* be imposed for a lesser offense, and the sentencing guidelines do not *require* a longer sentence for a lesser offense for a defendant with a B criminal history ranking. Moreover, even if defendant were correct that a sentence is disproportionate any time a more severe sentence is possible for a lesser offense under a particular sentencing scheme, defendant did not necessarily receive a more severe sentence than he would under gridblock 4-B. The total supervision time imposed as part of the maximum departure sentence permissible under gridblock 3-B is shorter than the total supervision period for the maximum departure sentence under gridblock 4-B." (Emphasis in original.)

As we understand the state's first argument, the fact that the trial court had discretion to depart from the presumptive sentence means that the departure sentence was not "required" within the meaning of the proportionality doctrine. According to the state, a sentence is constitutionally disproportionate only if the statute under which the sentence is imposed *requires* a greater sentence for a particular offense than required for a more serious offense. The state's premise is incorrect.

■ Under Article I, section 16, we compare the actual sentence imposed to the maximum sentence allowed by law for the greater offense to evaluate a disproportionality challenge. *Turner*, 296 Or at 457; *Merrill*, 216 Or at 463, 470; *Cannon*, 203 Or at 630, 632-33.[4] In *Turner*, *Merrill*, and *Cannon*, the trial court had the discretion to impose other sentences on the defendants. Nonetheless, the court focused on the sentence imposed in each case. In *Turner*, the defendant was convicted of attempted rape in the first degree. The applicable statutes established a maximum limit on an indeterminate sentence for a dangerous offender and permitted

---

[4] *See also State v. McLain*, 158 Or App 419, 423, 427, 974 P2d 727 (1999); *State v. Davilla*, 157 Or App 639, 645-47, 972 P2d 902 (1998), *petition for review held in abeyance pending decision in State v. Ferman-Velasco*, 157 Or App 415, 971 P2d 897 (1998), *rev allowed* 328 Or 666 (1999); *Ferman-Velasco*, 157 Or App at 419-21.

the trial court to impose a minimum sentence of up to one-half of the sentence. 296 Or at 453-54. The trial court imposed the maximum indeterminate sentence for a dangerous offender and one-half of that maximum as a minimum sentence. *Id.* On appeal, the defendant argued that his sentence was disproportional to the life sentence provided for a murder conviction. The court held that "[a] sentence for the remainder of a person's life is a greater sentence than a 30-year sentence with a 15-year minimum." *Id.* at 457. The court refused to speculate on Parole Board practices for the setting of release dates or to engage in any considerations· about the possible length of any particular defendant's life. Instead, the court emphasized that in analyzing constitutional proportionality challenges: "[w]e examine only the sentences as imposed by the trial judge." *Id.*

Likewise, the court in *Merrill* focused on the 20-year sentence imposed upon the defendant when comparing that sentence to a more serious crime, although the trial court could have used a permissible range of sentencing options for the lesser crime of "not less than one nor more than twenty years." 216 Or at 463, 470. In *Cannon*, the defendant argued that his sentence for assault with intent to commit rape was unconstitutionally disproportionate in comparison to the sentence available for rape. The defendant received a life sentence under a statute that according to the court "fixed the penalty for assault with intent to commit rape at life imprisonment in the penitentiary or for a period of not more than 20 years." *Cannon*, 203 Or at 631. The statute governing the more serious crime, rape, provided that a convicted defendant "may be sentenced to the penitentiary for not more than 20 years." *Id.* at 630.

The court concluded:

> "How can it be said that life imprisonment for an assault with intent to commit rape is proportioned to the offense when the greater crime of rape authorizes a sentence of not more than 20 years? It is unthinkable, and shocking to the moral sense of all reasonable men as to what is right and proper, that in this enlightened age jurisprudence would countenance a situation where an offender, either on a plea or verdict of guilty to the charge of rape, could be sentenced to the penitentiary for a period of not

more than 20 years, whereas if he were found guilty of the lesser offense of assault with intent to commit rape he could spend the rest of his days in the bastile." *Id.* at 632-33.

The above quoted language from *Cannon* demonstrates that the court applied a comparison between the actual sentence imposed and the maximum available for the greater crime. Thus we reject the state's first contention, that the periods of imprisonment are not disproportional, and turn to its second assertion that we should consider the periods of post-prison supervision in making our comparison.

In *State v. Shumway*, 291 Or 153, 164, 630 P2d 796 (1981), the defendant was convicted of intentional murder and sentenced to life with a minimum of 25 years of incarceration before being eligible for parole under the statute in effect at that time. The court compared that sentence with the sentence a defendant could have lawfully received if convicted of aggravated murder, a more serious offense. *Shumway*, 291 Or at 164. The maximum sentence for that crime carried a 15- or 20-year minimum period of incarceration before a defendant was eligible for parole. *Id.* at 158, 160, 164. The court held:

> "Under this statutory scheme, a defendant receives a lesser minimum sentence to be served before being eligible for parole for aggravated intentional homicide than he does for an unaggravated intentional homicide. This is in violation of Art I, § 16 of the Oregon Constitution and that provision * * * requiring the defendant to serve not less than 25 years before becoming eligible for parole is invalid and cannot be applied to the defendant; *the statutory provision requiring a life sentence is valid.*" *Id.* at 164 (emphasis added).

*Shumway* stands for the proposition that, for section 16 purposes, the comparison is between the amount of incarceration actually imposed and the maximum authorized sentence for the greater offense and that the consideration of lengths of parole or possible sanctions for the violation of parole does not enter into the calculus. *Accord Turner*, 296 Or at 457. It was neither dispositive nor relevant to the court in *Shumway* that both the murder statute and the aggravated murder statute required a convicted person to receive a life sentence and that, under both, Shumway could presumably be

returned to prison after release for the remainder of his life for a violation of the terms of parole. *See* ORS 144.343(2)(b) (1979). Similarly, the period of post-prison supervision and the possible sanction for a violation in this case are not relevant to our analysis under section 16.

The state relies on *State v. Rice*, 114 Or App 101, 107 n 6, 836 P2d 731, *rev den* 314 Or 574 (1992), for the proposition that the period of post-prison supervision should be included in the comparison between the two sentences. In *Rice*, the defendant was convicted of seven counts of negotiating a bad check, a misdemeanor, and received 90-day sentences for each count. The relevant statute allowed the trial court to exercise discretion in sentencing on a misdemeanor, so long as the sentence did not exceed six months. The defendant argued that his sentence was unconstitutionally disproportionate under section 16, because the presumptive sentence under the sentencing guidelines for first-degree theft, a felony, was probation. We upheld the sentence, concluding that under a misdemeanor statutory scheme that did not require the imposition of *any* sentence when compared with a statutory scheme that mandated the imposition of a sentence of probation for a felony, no proportionality problem occurred under section 16. *Rice*, 114 Or App at 107. We do not believe that the holding in *Rice* is controlling in this case where the trial court was required to impose either a presumptive or departure sentence of determinate duration for a felony. Here, the comparison is between two different levels of the same felony and presents the same situation addressed by the court in *Shumway*.

In conclusion, the maximum sentence that defendant lawfully could have received would have been an 18-month term of incarceration if defendant had been convicted of forging a $5,000 check and if the sentencing court had found grounds for a departure sentence. Because the sentencing court imposed a 24-month term of incarceration for a less serious level of forgery on each conviction, the sentences violate Article I, section 16.

Reversed and remanded for resentencing.