Argued and submitted May 15, affirmed December 31, 2014, petition for review denied July 30, 2015 (357 Or 595)

MATTHEW RYAN SEXTON,
*Petitioner-Appellant,*

*v.*

Rob PERSSON,
Superintendent,
Oregon State Correctional Institution,
*Defendant-Respondent.*

Marion County Circuit Court
11C11800; A151067

341 P3d 881

Ryan T. O'Connor argued the cause and filed the briefs for appellant.

Ryan Kahn, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jeremy C. Rice, Assistant Attorney General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and Schuman, Senior Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Petitioner killed his parents in 1998 when he was 17 years old. Based on a guilty plea, he was convicted of two counts of murder and sentenced to consecutive life sentences with mandatory minimum prison terms of 25 years. In 2011, he filed a successive petition for post-conviction relief under ORS 138.510 and ORS 138.550,[1] asserting that his sentence for murder was "unconstitutionally disproportionate to the penalty for the greater-included offense of aggravated murder under Article I, section 16[,] of the Oregon Constitution."[2] Ultimately, the post-conviction court denied his petition and dismissed the case with prejudice. Petitioner appeals, contending that his "late and successive petition" was appropriate because the grounds for relief asserted therein "were precluded by controlling Oregon Supreme Court statutory interpretation until that court overruled itself months prior to the filing of the successive petition[.]" Furthermore, assuming that the petition was properly filed, petitioner argues that the "sentence for intentional murder under ORS 163.115(1)(a) (1997) [is unconstitutionally] disproportionate

---

[1] ORS 138.510(3) provides that a petition for post-conviction relief

"must be filed within two years of the following, *unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition*:

"(a) If no appeal is taken, the date the judgment or order on the conviction was entered in the register.

"(b) If an appeal is taken, the date the appeal is final in the Oregon appellate courts.

"(c) If a petition for certiorari to the United States Supreme Court is filed, the later of:

"(A) The date of denial of certiorari, if the petition is denied; or

"(B) The date of entry of a final state court judgment following remand from the United States Supreme Court."

(Emphasis added.) Under ORS 138.550(3),

"[a]ll grounds for relief claimed by petitioner in a petition [for post-conviction relief] must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition. However, any prior petition or amended petition which was withdrawn prior to entry of judgment by leave of the court, as provided in ORS 138.610, shall have no effect on petitioner's right to bring a subsequent petition."

[2] Under Article I, section 16, "[c]ruel and unusual punishments shall not be inflicted, but all penalties shall be proportional to the offense."

to a sentence for aggravated murder under ORS 163.105 (1997)[.]"[3] We conclude that the sentences imposed on the two murder convictions are not unconstitutionally disproportionate under Article I, section 16, and affirm the post-conviction court's judgment on that basis.

As noted, in the underlying criminal case, petitioner was convicted of two counts of murder. In his plea petition, he acknowledged that the maximum imprisonment for each count of murder was life with a 25-year-minimum and, at sentencing, the trial court imposed consecutive life sentences with minimum terms of imprisonment of 25 years. *See* ORS 163.115(5) (1997); ORS 137.707(4) (1997); *see also State v. Haynes*, 168 Or App 565, 7 P3d 623, *rev den*, 331 Or 283 (2000) (discussing ameliorative amendment to ORS 163.115 to provide for parole after completion of minimum term of imprisonment). The trial court's judgment was affirmed on direct appeal. *State v. Sexton*, 169 Or App 306, 9 P3d 157, *rev den*, 331 Or 244 (2000). Petitioner then sought post-conviction relief. The post-conviction court's denial of relief was affirmed on appeal. *See Sexton v. Lawhead*, 201 Or App 299, 120 P3d 29, *rev den*, 339 Or 475 (2005).

Then, in 2011, petitioner again sought post-conviction relief. In his petition, he asserted that his petition was properly filed under ORS 138.510(3) and ORS 138.550(3) because it asserted grounds for relief that could not reasonably have been raised on direct appeal or in his earlier petition for post-conviction relief. He further contended that his sentence was unconstitutionally disproportionate because,

"[u]nder the penalty scheme for murder, a defendant, such as Petitioner, who was sentenced simultaneously to two or more consecutive 25-year minimum sentences for the crime of murder committed in 1998 must serve the entire aggregate sum of the consecutive minimum terms (50+ years) before being eligible for parole or release on post-prison supervision."

---

[3] Because petitioner's underlying crimes were committed in 1998, throughout this opinion, we refer to the 1997 versions of the criminal statutes, which were in effect at that time.

However, based on the Oregon Supreme Court's decisions in *Severy/Wilson v. Board of Parole*, 349 Or 461, 245 P3d 119 (2010), and *Janowski/Fleming v. Board of Parole*, 349 Or 432, 245 P3d 1270 (2010), he asserted that,

> "[u]nder the penalty scheme for aggravated murder, a defendant who was sentenced simultaneously to two or more consecutive 30-year minimum sentences for the crime of aggravated murder committed in 1998 is entitled to parole eligibility and the elimination of all minimum sentences after no more than 25 years."

The state[4] moved for summary judgment, arguing that the petition did not raise a cognizable post-conviction claim and that it was barred as successive and untimely. Petitioner responded by filing a cross-motion for summary judgment asserting that the otherwise untimely and successive petition was proper under ORS 138.510(3) and ORS 138.550(3) because it raised grounds that could not reasonably have been raised in the original petition. Further, he asserted that proportionality mandated that he be subject to only a 25-year-minimum prison term, rather than the two consecutive 25-year-minimum terms to which he had been sentenced. The state replied that defendant's sentence was not unconstitutionally disproportionate given, among other things, the nature of his crime and the penalties available for aggravated murder.

In a letter opinion, the post-conviction court agreed with the state:

> "Petitioner admits his petition is beyond the statute of limitations and successive. Petitioner advances that his claims fit within the escape clauses of ORS 138.510(3) and/or 138.550(3) (ground for relief asserted could not reasonably have been raised in the original or amended petition). The essence of Petitioner's claim is that the sentence he received on Murder charges (ORS 163.115) for the double-murder of his parents is unconstitutionally disproportionate to a sentence now available were Petitioner to be sentenced on the charges of Aggravated Murder (ORS 163.095). A key aspect of Petitioner's argument is the consecutive nature of the

---

[4] Defendant is the superintendent of the Oregon State Correctional Institution. For clarity, throughout this opinion we refer to defendant as "the state."

sentences imposed on him for offenses committed when he was 17 years of age. The result of which is that Petitioner is not eligible for release for fifty years. Petitioner alleges that if he had been convicted of the greater offenses of Aggravated Murder, he would be eligible for a release hearing before the Board of Parole after completing only twenty years.

"It is the assertion now of a right not generally recognized to be in existence at the time of trial that Petitioner wants this court to use as a basis for another shot at post-conviction relief. The problem with Petitioner's analysis lies in the cases cited *Severy/Wilson* \* \* \* and *Janowski/Fleming* \* \* \*. Petitioner's cases are inapposite. Those cases involved determinate sentencing, not sentences imposed under Ballot Measure 11 and amendments to ORS 163.105. There is nothing that 'shocks the moral sense of all reasonable persons' from consecutive life sentences with 25 year minimums imposed on anyone convicted of a brutal double murder."

The court concluded that petitioner's sentence was "not unconstitutionally disproportionate" and that the petition was "beyond the statute of limitations, successive and not within the escape clause." Based on those conclusions, the court entered a judgment denying the petition and dismissing the case with prejudice.

On appeal, petitioner again asserts that he properly filed his "successive and untimely" petition for post-conviction relief "because the grounds he raised in the successive petition could not have been reasonably raised at an earlier time." "When a petitioner has obtained direct appellate review and filed a petition for post-conviction relief, \* \* \* the petitioner may not seek additional post-conviction relief unless the grounds for relief asserted could not reasonably have been raised on direct review or in an earlier post-conviction petition." *Bogle v. Belleque*, 231 Or App 395, 396, 220 P3d 63 (2009), *rev den*, 347 Or 608 (2010) (citing ORS 138.550). Here, as noted, petitioner contends that his petition was proper because the grounds for relief asserted therein could not reasonably have been raised earlier. Petitioner points out that the Oregon Supreme Court cases on which he based his claim for relief were decided in 2010. Furthermore, he notes that one of those cases—*Severy/*

*Wilson*—overruled the Oregon Supreme Court's earlier decision in *Norris v. Board of Parole*, 331 Or 194, 13 P3d 104 (2000), and that he could not have raised the grounds for relief asserted in the petition while *Norris* controlled. The state, for its part, does not continue to assert that the petition was not properly filed because it was untimely and successive. Instead, it contends that the post-conviction court did not err in denying the petition for post-conviction relief because petitioner's "sentence is less severe than the maximum sentence that would have been available had he been convicted of aggravated murder" and, therefore, "his sentence is not unconstitutionally disproportionate." On that issue, petitioner maintains that his "sentence for murder is unconstitutionally disproportionate to a sentence for the greater offense of aggravated murder." Assuming that the petition for post-conviction relief was properly filed under ORS 138.510(3) and ORS 138.550(3), we nonetheless agree with the state that petitioner's sentence is not unconstitutionally disproportionate and, therefore, the post-conviction court did not err in dismissing the petition.

Article I, section 16, provides, in part, that "[c]ruel and unusual punishments shall not be inflicted, but all penalties shall be proportional to the offense." Pursuant to that provision, the legislature is barred "from punishing a lesser-included offense (such as attempt) more severely than the greater-inclusive offense (such as completion of the attempted crime)." *State v. Wheeler*, 343 Or 652, 677, 175 P3d 438 (2007); *see Cannon v. Gladden*, 203 Or 629, 632, 281 P2d 233 (1955) ("How can it be said that life imprisonment for an assault to commit rape is proportionate to the offense when the greater crime of rape authorizes a sentence of not more than 20 years?"). The Oregon Supreme Court applied that principle in evaluating the constitutionality of the defendant's sentence in *State v. Shumway*, 291 Or 153, 630 P2d 796 (1981). In that case, the defendant was convicted of intentional murder. Under the statutes in effect at the time, a person convicted of aggravated murder was required to serve a term of "confinement of either 20 years or 15 years, depending on the aggravating circumstances, without the possibility of parole or release." *Id.* at 160. A person convicted of murder, on the other hand, was required

to serve "25 years before being eligible for parole." *Id.*[5] The defendant in *Shumway* was convicted of intentional homicide and sentenced, as required by the statute, "to serve 25 years before becoming eligible for parole." *Id.* at 164. However, if "he had been convicted of intentional homicide, committed under any of the aggravating circumstances provided in [the statute]," the required sentence would have made him "eligible for parole either 20 or 15 years after sentencing, depending upon the aggravating circumstances." *Id.* As the court explained, under that statutory scheme, a defendant received a lesser-required sentence "to be served before being eligible for parole for aggravated intentional homicide than" he would for an "unaggravated intentional homicide." *Id.* The court concluded that that scheme violated Article I, section 16's requirement that "all penalties shall be proportioned to the offense." *Id.* at 163 (internal quotation marks omitted); *see also Wheeler*, 343 Or at 676 (summarizing *Shumway*); *State v. Koch*, 169 Or App 223, 229, 7 P3d 769 (2000) ("*Shumway* stands for the proposition that, for section 16 purposes, the comparison is between the amount of incarceration actually imposed and the maximum authorized sentence for the greater offense and that the consideration of lengths of parole or possible sanctions for the violation of parole does not enter into the calculus.").

In determining whether a sentence violates the "vertical proportionality" requirement, "[t]he relevant comparison for purposes of Article I, section 16, is between the actual sentence imposed for the defendant's offense and the maximum sentence allowed by law for the greater offense." *State v. Barajas*, 254 Or App 106, 111, 292 P3d 636 (2012), *rev den*, 353 Or 747 (2013) (internal quotation marks and brackets omitted); *see State v. Dobash*, 210 Or App 145, 147, 149 P3d 1235 (2006) (determining whether the imposition of a sentence for a lesser offense is greater than that

[5] The court explained in *Shumway* that, although the statutes allowed for imposition of the death penalty, the court had concluded that the provisions "regarding the death penalty were invalid." 291 Or at 156 (citing *State v. Quinn*, 290 Or 383, 407, 623 P2d 630 (1981)). Thus, as the state points out, the court in *Shumway* "compared the only sentence available for a murder conviction— life with a possibility of release after 25 years—with the only sentence available for aggravated murder—life with the possibility of release after not more than 20 years[.]"

available for a more serious offense "requires a comparison between the actual sentence imposed and the maximum sentence allowable by law for the greater offense" (internal quotation marks and brackets omitted)); *Koch*, 169 Or App at 227 ("Under Article I, section 16, we compare the actual sentence imposed to the maximum sentence allowed by law for the greater offense to evaluate a disproportionality challenge."); *cf. State v. Simonson*, 243 Or App 535, 541-42, 259 P3d 962 (2011), *rev den*, 353 Or 788 (2013) (concluding that a penalty was unconstitutionally disproportionate where the defendant's "acts in committing sexual abuse in the second degree necessarily [were] less severe than the same acts would have been if [the] defendant's victims had been younger," but the penalty for the defendant's crimes was "greater than the potential penalty for the same acts against younger victims").[6]

In support of his position that his consecutive sentences for murder are disproportionate, petitioner explains that, in *Janowski/Fleming*, the court interpreted the 1985 version of ORS 163.105(3) and "explained, for the first time, that the board's finding at a murder review hearing that an inmate is likely to be rehabilitated automatically converts the terms of confinement to life with the possibility of parole and *overrides* the minimum terms imposed by the court under ORS 163.105(1)." (Emphasis in original.) Thus, once the board makes that finding, an inmate serving a life sentence for aggravated murder under that version of the statute "is immediately eligible for parole (pursuant to a to-be-determined board process)." *See Janowski/Fleming*, 349 Or at 446-56. Furthermore, in *Severy/Wilson*, the court

---

[6] As petitioner points out and the state acknowledges, in a footnote in *Simonson*, we stated that vertical proportionality is "measured by the sentences available for the conduct at issue, not on what any individual defendant actually receives" and appeared to suggest that an analysis of vertical proportionality requires a comparison with the minimum sentence available for the more serious crime. 243 Or App at 542 n 8. However, as we have explained on a number of occasions, to determine whether a sentence is disproportionate for purposes of an Article I, section 16, we compare the actual sentence a defendant received with the maximum sentence allowed for the greater crime. *See Barajas*, 254 Or App at 111; *Dobash*, 210 Or App at 147; *Koch*, 169 Or App at 227; *see also Shumway*, 291 Or at 163-64 (comparing the required sentence for intentional homicide with the required sentence for aggravated intentional homicide). To the extent we suggested otherwise in the *Simonson* footnote, that suggestion was contrary to precedent and we disavow it.

"considered the effect of the likely to be rehabilitated finding on two consecutive aggravated murder sentences." It concluded that, "when the board finds a person convicted of two counts of aggravated murder and sentence[d] to consecutive sentences likely to be rehabilitated, the person becomes immediately eligible for parole." *See Severy/Wilson*, 349 Or at 474-78. According to petitioner, in light of those decisions, his consecutive murder sentences are vertically disproportionate because "a person sentenced to two consecutive murder terms must serve 50 years in prison without the possibility of early release." However, "a person convicted of two counts of aggravated murder and sentenced to consecutive terms is sentenced to 60 years in prison" but has a possibility of release after 25 years. "Thus, a person convicted of the greater offense of aggravated murder may receive * * * less time in prison than a person convicted of the lesser offense of murder."

The state agrees with petitioner that "his consecutive sentences allow for parole after no less than 50 years." It also agrees that, under *Severy/Wilson*, had petitioner "received consecutive life sentences for aggravated murder" and had the board found him likely to be rehabilitated at a murder review hearing, he could have become eligible for "parole after only 25 years."[7] Nonetheless, the state asserts that "petitioner draws the wrong comparison." The state urges that, "had petitioner been convicted of aggravated murder, he would have been sentenced to either 'true life'—that is, 'life imprisonment without the possibility of release or parole'—or to life with a 30-year minimum." Thus, the maximum sentence petitioner could have received

[7] We note that the possibility of release under the statutory scheme at issue in *Janowski/Fleming* and *Severy/Wilson* was dependent on the result of a murder review hearing held by the parole board. At that hearing, the board was to consider whether or not the prisoner was likely to be rehabilitated within a reasonable time. If the board found unanimously that the prisoner had demonstrated that he or she was likely to be rehabilitated within a reasonable time, only then was the board required to determine the inmate's prison term and set a parole release date. Thus, a person sentenced to life in prison—or given consecutive life sentences—was not, at the time of sentencing, entitled to release after serving 25 years. Rather, entitlement to a parole release date would only arise if, at a murder review hearing after 25 years of imprisonment, the parole board found that the prisoner was likely to be rehabilitated within a reasonable time—a result that was not guaranteed.

for aggravated murder "was life without the possibility of release or parole—a sentence much more severe than petitioner's sentence of life *with* the possibility of release or parole." (Internal quotation marks omitted; emphasis in original.)

Assuming that the parties are correct in their understanding of the application of *Severy/Wilson* to this case, the state nonetheless is correct that petitioner's sentence is not unconstitutionally disproportionate. Under ORS 163.115(5) (1997),

"(a)   A person convicted of murder, who was at least 15 years of age at the time of committing the murder, shall be punished by imprisonment for life.

"(b)   When a defendant is convicted of murder under this section, the court shall order that the defendant shall be confined for a minimum of 25 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp."

In contrast, the sentencing options for aggravated murder were set forth in ORS 163.105 (1997). Under that statute,

"(1)(a)   Except as otherwise provided in ORS 137.700, when a defendant is convicted of aggravated murder as defined by ORS 163.095, the defendant shall be sentenced, pursuant to ORS 163.150, to death, life imprisonment without the possibility of release or parole or life imprisonment.

"(b)   A person sentenced to life imprisonment without the possibility of release or parole under this section shall not have that sentence suspended, deferred or commuted by any judicial officer, and the State Board of Parole and Post-Prison Supervision may not parole the prisoner or reduce the period of confinement in any manner whatsoever. The Department of Corrections or any executive official may not permit the prisoner to participate in any sort of release or furlough program.

"(c)   If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(2)   At any time after 25 years from the date of imposition of a minimum period of confinement pursuant to subsection (1)(c) of this section, the State Board of Parole and Post-Prison Supervision, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable time. The proceeding shall be conducted in the manner prescribed for a contested case hearing under ORS 183.310 to 183.550 except that:

"(a)   The prisoner shall have the burden of proving by a preponderance of the evidence the likelihood of rehabilitation within a reasonable period of time; and

"(b)   The prisoner shall have the right, if the prisoner is without sufficient funds to employ an attorney, to be represented by legal counsel, appointed by the board, at board expense.

"(3)   If, upon hearing all of the evidence, the board, upon unanimous vote of all its members, finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise the board shall deny the relief sought in the petition.

"(4)   Not less than two years after the denial of the relief sought in a petition under this section, the prisoner may petition again for a change in the terms of confinement. Further petitions for a change may be filed at intervals of not less than two years thereafter."

The state is correct that, when petitioner's sentence is compared with the maximum sentence he could have received had he been convicted of aggravated murder, it is not unconstitutionally disproportionate. Under ORS 137.707(1) (1997), when a person charged with aggravated murder was 15, 16, or 17 at the time of the offense, that person "shall be prosecuted as an adult in criminal court." Furthermore, when such a defendant was found guilty of aggravated murder, the sentences provided for aggravated murder in ORS 163.105 were life imprisonment with the

possibility of parole, life imprisonment without the possibility of parole, and death—"except that a person who was under 18 years of age at the time the offense was committed is not subject to a sentence of death." ORS 137.707(2). Because petitioner was 17 at the time of his underlying crimes, had he been convicted of aggravated murder, he could not have been sentenced to death but could have been sentenced to life either with or without the possibility of parole. *See State v. George*, 337 Or 329, 334 n 4, 97 P3d 656 (2004) (noting that, under ORS 137.707, a person who committed aggravated murder at age 17 "was not subject to the possibility of being sentenced to death").[8] Thus, petitioner's sentence—life with the possibility of parole—is not disproportionate to the sentence—life in prison without the possibility of parole— that he could have received had he been convicted of aggravated murder. For that reason, the post-conviction court did not err in denying the petition for post-conviction relief and dismissing the action with prejudice.

Affirmed.

---

[8] We note that, under the United States Supreme Court's decision in *Miller v. Alabama*, 567 US ___, ___, 132 S Ct 2455, 2469, 183 L Ed 2d 407 (2012), "the Eighth Amendment [to the United States Constitution] forbids a sentencing scheme that *mandates* life in prison without the possibility of the parole for juvenile offenders." (Emphasis added.) According to the court, "a judge or jury must have the opportunity to consider mitigating circumstances before imposing" such a penalty on juveniles. *Id.* at 2475. Thus, sentencing schemes that mandate that a child convicted of homicide receive lifetime incarceration without possibility of parole, regardless of any mitigating factors, "violate th[e] principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment." *Id.* Here, of course, the sentencing scheme at issue did *not* provide for a *mandatory* sentence of life without the possibility of parole. Instead, under ORS 163.150 (1997) and ORS 137.707(2) (1997), once a juvenile was convicted of aggravated murder, there would be a penalty-phase proceeding and the jury would be presented with, among other things, aggravating and mitigating evidence concerning the defendant's character or background, and circumstances of the offense. At that hearing, the jury would decide whether to impose life imprisonment with the possibility of parole or life imprisonment without the possibility of parole. *See George*, 337 Or at 334 n 4 ("ORS 163.150 provides for a separate penalty-phase proceeding when a criminal defendant is found guilty of aggravated murder. In such a proceeding, the jury must decide between three possible sentences: life imprisonment with the possibility of parole, life imprisonment without the possibility of parole (true life), or death. ORS 137.707(2) provides that ORS 163.150 applies when a person charged with and convicted of aggravated murder was 15, 16, or 17 years of age at the time that the offense was committed, except that the person is not subject to the death penalty."). Thus, even in light of *Miller*, had petitioner been convicted of aggravated murder, he could have received a sentence of life without the possibility of parole.