Argued and submitted February 10, 2015, remanded for resentencing
August 3, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TODD DANIEL DAVILLA,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR9200004; A153461

380 P3d 1003

Eve L. Miller, Judge.

Kendra M. Matthews argued the cause for appellant. With her on the briefs was Ransom Blackman LLP.

Timothy A. Sylwester, Assisted Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## ORTEGA, P. J.

In 1991, when defendant was 16 years old, he killed a 22-year-old woman with a small, dull "Boy Scout knife" during an attempted rape. He pleaded guilty and was convicted as an adult of murder, first-degree burglary, and first-degree attempted rape, and originally received an indeterminate sentence of life imprisonment for the murder conviction. Over the past two decades, defendant's murder conviction has been remanded for resentencing several times and, in this appeal, defendant challenges a judgment imposing his most recent sentence, an upward departure of 600 months' imprisonment and lifetime post-prison supervision. The first three of his five assignments of error challenge, in various ways, the trial court's imposition of an upward departure sentence based on the aggravating factor that he used a dangerous weapon during the murder. Defendant's fourth and fifth assignments assert that his 600-month sentence violated the "proportionality principles" of Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. Accordingly, defendant seeks another remand for resentencing.

We conclude that the sentencing court's on-the-record explanation supporting its imposition of an upward departure sentence fails for two reasons. First, the court's conclusion that substantial and compelling reasons existed to impose a departure sentence appears to be based on factors other than defendant's use of a dangerous weapon. Because defendant's use of a dangerous weapon was the only aggravating factor that the state proved at trial, the court was limited to consideration of only that factor when deciding whether a substantial and compelling reason justified an upward departure. Second, to the extent the court relied on defendant's "use of a dangerous weapon" to impose a departure sentence, the court's explanation failed to establish why that factor made the circumstances of this particular case so exceptional that the presumptive sentence would not accomplish the purposes of the sentencing guidelines. In this posture, we decline to address defendant's proportionality challenge and remand for resentencing.

## I. BACKGROUND

Given defendant's age at the time of the crimes, the state initially moved to remand the case from juvenile to circuit court. Defendant agreed not to oppose remand and to plead guilty to murder, ORS 163.115 (1989), first-degree burglary, ORS 164.225 (1989), and first-degree attempted rape, ORS 161.405 (1989), ORS 163.375 (1989), in exchange for the state's agreement not to prosecute him for aggravated murder. The agreement also provided that the "Uniform Sentencing Guidelines Grid Blocks apply" to defendant's sentencing and that, under those guidelines, his murder conviction had a crime seriousness level of "11" and he had a criminal history score of "I."[1] Given defendant's classification in the sentencing grid block, the sentencing guidelines provided a presumptive term of 120 to 121 months for murder.[2]

Rather than imposing sentence under the sentencing guidelines, the trial court proceeded under ORS 163.115(3)(a) (1989)[3] to impose an indeterminate sentence of life imprisonment on the murder conviction. On direct appeal, we affirmed. *State v. Davilla*, 121 Or App 583, 855 P2d 1160, *adh'd to on recons*, 124 Or App 87, 860 P2d 894 (1993), *rev den*, 318 Or 351 (1994) (concluding that, under ORS 138.222(2)(d), we could not review his claimed errors on direct appeal) (*Davilla I*).

Defendant then sought and received post-conviction relief. The post-conviction court vacated defendant's sentence on the basis of *State v. Morgan*, 316 Or 553, 560, 856 P2d 612 (1993), which held that a defendant could not receive a sentence of life imprisonment for murder, other than as

---

[1] Under the sentencing guidelines, a criminal history score of "I" generally means that the defendant's history does not include any juvenile adjudication for a felony or any adult conviction for a felony or Class A misdemeanor. OAR 213-004-0007.

[2] Defendant's sentences for first-degree burglary and first-degree attempted rape are not at issue on appeal and, therefore, are not discussed.

[3] ORS 163.115(3) (1989) provided that a person convicted of murder "shall be punished by imprisonment for life" but also provided for eligibility for parole or work release after 10 or 25 years. In addition, the State Board of Parole and Post-Prison Supervision could set aside the 10 or 25 year minimum term by unanimous vote.

a departure sentence, because the sentencing provisions in ORS 163.115(3)(a) (1989) had been impliedly repealed by the sentencing guidelines. We affirmed that decision without opinion. *Davilla v. Zenon*, 147 Or App 241, 932 P2d 1217, *rev den*, 325 Or 403 (1997) (*Davilla II*).

On remand, the sentencing court proceeded under the sentencing guidelines in accordance with the plea agreement that categorized defendant in the 11-I grid block. However, the court found that the state had proved multiple aggravating factors and imposed an upward departure sentence of 1,394 months. On defendant's appeal, we vacated his sentence because a sentence that included 1,394 months' imprisonment was equivalent to a term of life without the possibility of release or parole, and that result was impermissible given that ORS 161.620 (1989) precluded such a sentence for a person remanded from juvenile court. *State v. Davilla*, 157 Or App 639, 642-43, 972 P2d 902 (1998), *rev den*, 334 Or 76 (2002) (*Davilla III*). Accordingly, we remanded for resentencing a second time.

In 2002, on remand from *Davilla III*, the court imposed an upward departure sentence of 684 months on the murder conviction based on the aggravating factors found by the sentencing court after defendant received post-conviction relief. On appeal, we initially affirmed without opinion, *State v. Davilla*, 193 Or App 484, 93 P3d 845 (2004), but defendant sought reconsideration based on the then-recent United States Supreme Court decision in *Blakely v. Washington*, 542 US 296, 304-05, 124 S Ct 2531, 159 L Ed 2d 403 (2004) (under mandatory sentencing guidelines scheme, the Sixth Amendment jury-trial right prohibits judges from enhancing criminal sentences based on facts other than those found by a jury or admitted by the defendant). We granted reconsideration and, because the sentencing court and not a jury had found the aggravating factors used to impose an upward departure sentence, we remanded for resentencing for a third time. *State v. Davilla*, 196 Or App 783, 103 P3d 671 (2004) (*Davilla IV*) (citing *State v. Gornick*, 196 Or App 397, 102 P3d 734 (2004), *rev'd on other grounds*, 340 Or 160, 130 P3d 780 (2006) (waiver of a defendant's Sixth Amendment right to a jury trial implicit in a guilty plea did not also waive a defendant's right to have a jury

determine aggravating factors that would support a departure sentence as required by *Blakely*)).

In 2005, the legislature enacted ORS 136.765(2), which provided a procedural mechanism to comply with the constitutional issues raised by *Blakely*. Or Laws 2005, ch 463, § 2. In particular, in cases where the state is relying on an aggravating factor to increase a defendant's sentence, ORS 136.765(2) requires the state to provide "written notice to the defendant of the [aggravating factor], and the state's intention to rely on it[.]" Accordingly, in this case, the state provided defendant with notice of its intent to prove four aggravating factors to support an upward departure sentence:

"1) The defendant demonstrated deliberate cruelty toward the victim * * *.

"2) The defendant used a dangerous weapon in the commission of this crime.

"3) The conduct of the defendant that caused the death of [the victim] was committed deliberately and with the reasonable expectation that the death * * * would result.

"4) The defendant committed this murder in an effort to conceal his commission of the crimes of Attempted Rape I and Burglary I."

In response, defendant filed a demurrer challenging the state's notice on the ground that, among other things, the potential aggravating factors listed in the sentencing guidelines, *see* OAR 213-008-0002(1)(b),[4] were the result of an unconstitutional delegation of legislative authority to the executive branch. The sentencing court granted defendant's demurrer on that basis and concluded that the departure provisions of the sentencing guidelines had no continuing legal effect. Accordingly, the court used the sentencing framework that existed before the enactment of the guidelines—that is, ORS 163.115 (1989), the same statute under which defendant was initially sentenced—to impose

---

[4] At the time of defendant's crimes, the sentencing guidelines were codified in OAR chapter 253. In 1995, the guidelines were amended slightly and recodified into OAR chapter 213 and, other than the OAR 213 prefix, generally used the same numbering scheme. Accordingly, throughout this opinion we refer to the current number of each rule cited.

a sentence of an indeterminate life term with immediate eligibility for parole. *State v. Davilla*, 234 Or App 637, 642, 230 P3d 22 (2010) (*Davilla V*). The state appealed, and we concluded that the sentencing guidelines were not invalid as an unconstitutional delegation of authority. *Id.* at 646. We also rejected various alternative bases for affirmance advanced by defendant—among them an argument that the definition of aggravating factors was so vague as to render the sentencing guidelines void. *Id.* at 650. Consequently, we reversed and remanded for resentencing.

That leads us to the proceedings that are now before us on appeal. After the remand in *Davilla V*, the state filed notice under ORS 136.765(2) that it intended to prove the same four aggravating factors that it had asserted during the previous sentencing proceeding, *i.e.*, deliberate cruelty, use of a dangerous weapon, deliberate conduct that caused the victim's death with the reasonable expectation that death would result, and that defendant committed the murder to conceal his other crimes. Defendant filed a pretrial motion challenging the state's authority to proceed on those factors, and the trial court granted defendant's motion as to the third and fourth factors. Defendant then waived his right to a jury trial and proceeded to a bench trial on the first and second factors.

At trial, defendant did not dispute that he had used a dangerous weapon during the crime. Thus, the only dispute was whether he had demonstrated deliberate cruelty toward the victim. The trial consisted of several days of evidence outlining the facts and circumstances of the murder, including testimony from the victim's fiancé, the medical examiner, the officers who responded to the crime scene and interviewed defendant, images from the murder scene and the autopsy, and defendant's statements to police about how the crimes unfolded.

The evidence showed that defendant knocked on the door of a house in Wilsonville to inquire after a teenage girl that he had previously met. He encountered the victim there, and after he determined that she was alone, he returned to his home a short distance away and retrieved his "Boy Scout knife." He returned to the victim's location

and again knocked on the door of the home. The victim, who was speaking to her fiancé on the phone, answered the door. Defendant, intending to rape the victim, forced his way into the home at knifepoint. He forced the victim to disrobe in a back bedroom and put the knife down. The victim fought defendant's attempted rape and gained control of the knife. After a struggle, defendant overpowered the victim and forced her to the floor. While straddling the victim—who was face down—defendant pulled her head back and used the knife to kill her, nearly decapitating her in the process. In defendant's own words, he "pushed the edge of the knife—the tip of the knife inward to her throat and I pulled across her throat * * * [m]aybe up to 15 times, until she lost so much blood that she was no longer breathing."

At the end of the trial, the court found that the state had not proved that defendant had demonstrated "deliberate cruelty" during the murder. Even though the court found that defendant's actions were "overkill" and "done in a manner that went further than what somebody such as [the medical examiner] or an adult criminalist or an adult detective would have thought necessary, or what perhaps any adult would find necessary" to murder someone, the court found that defendant's actions were focused on the goal of killing the victim, not by a desire to "sadistically inflict" pain on her. The court explained that, even though defendant's actions were "overkill" and went beyond what "is inherent in a normal criminal episode," defendant's "motivation was anger and self-preservation," not to "inflict more physical pain, more psychological or emotional pain, as an end in itself."

Therefore, the parties proceeded to a sentencing hearing on the single aggravating factor that defendant had used a dangerous weapon during the murder. At the sentencing hearing, the state introduced information about the victim and presented the testimony of the victim's family and others affected by the victim's murder. Defendant submitted mitigating evidence, which included, among other information, his Department of Corrections records, educational records, letters from employers, and other information that defendant had made efforts while in prison to make a positive contribution to the community.

At the close of the sentencing hearing, based on the "use of a dangerous weapon" aggravating factor, the court imposed an upward departure sentence of 600 months' imprisonment to be followed by lifetime post-prison supervision. We examine the court's on-the-record findings that support its departure in greater detail in our discussion of defendant's second and third assignments of error, but, in general, the court explained that defendant's choice of weapon was significant to the court's decision to depart because the small dull knife that he used required defendant to come into "very close proximity" to the victim and "caused an increased amount of contact and an increased amount of pain and suffering to" the victim. The court also noted that defendant's choice of weapon "created this horrific mechanism of injury and death" and that the court could not understand how defendant "could have acted in such a detached and unemotional manner when there was such a disgusting amount of blood loss." The court also identified defendant's "obvious lack of empathy" as the "most overriding" issue related to the "ultimate safety of the public and whether rehabilitation has occurred over the past 21 years." The court concluded that it was "going to make a very significant departure" based on evidence that defendant continued to lack empathy for the victim and those affected by his crimes.

## II. ANALYSIS

A. *Does OAR 213-008-0002(2) preclude use of a weapon as an aggravating factor?*

In his first assignment of error, defendant asserts that the trial court erred by allowing the state to proceed to trial on the theory that defendant's use of a dangerous weapon was an aggravating factor that could justify a departure sentence. Defendant argues that OAR 213-008-0002(2) precludes consideration of an aggravating fact that is integral to the commission of the offense to impose a departure sentence. And in this instance, defendant maintains that the use of a dangerous weapon is "integral" to the offense of murder.

To address that assignment, we begin with some background and the legal framework that applies to departure

sentences. Before 1989, "sentencing courts had considerable latitude in determining appropriate sentences for criminal convictions." *State v. Lykins*, 357 Or 145, 154, 348 P3d 231 (2015). "That latitude sometimes led to disparate sentences for similarly situated defendants." *Id.* Accordingly, to provide greater uniformity in sentencing, in 1989, the legislature approved felony sentencing guidelines that were developed at the legislature's direction by what is now known as the Oregon Criminal Justice Commission. Or Laws 1989, ch 790, § 87. The guidelines adopted presumptive sentences for most felonies, subject to judicial discretion to depart from those presumptive sentences for "substantial and compelling reasons." OAR 213-008-0001.

As the Supreme Court noted in *Lykins*, the Oregon Sentencing Guidelines Implementation Manual (1989) contains the official commentary to the guidelines and provides legislative history that aids our interpretation of the guidelines. 357 Or at 155. The implementation manual makes explicit that "the drafters intended that presumptive sentences be imposed in all but the most unusual cases: 'When a case represents a truly unique set of circumstances, the sentencing judge is free to impose a[n] appropriate sentence, other than the presumptive sentence.'" *Id.* (quoting Oregon Sentencing Guidelines Manual at 123). In sum, "[t]rial courts may impose enhanced sentences in criminal cases when an aggravating factor provides a substantial and compelling reason for doing so." *State v. Speedis*, 350 Or 424, 426, 256 P3d 1061 (2011).

The sentencing guidelines provide a nonexclusive list of potential aggravating factors. There are, however, some restrictions on what can be an aggravating factor. Defendant's first assignment of error hinges on OAR 213-008-0002(2), which provides:

> "If a factual aspect of a crime is a statutory element of the crime or is used to subclassify the crime on the Crime Seriousness Scale, that aspect of the current crime of conviction may be used as an aggravating or mitigating factor only if the criminal conduct constituting that aspect of the current crime of conviction is significantly different from the usual criminal conduct captured by the aspect of the crime."

The commentary to OAR 213-008-0002(2) explains that that provision

> "restricts consideration of 'aggravating' or 'mitigating' facts as grounds for departure when that consideration would have a duplicating effect on a sentence imposed under these rules. If a given fact is a statutory element of the crime, or if it is used under OAR [213-004-0002(2)] to subclassify the crime on the Crime Seriousness Scale, that fact generally may not be used as an aggravating or mitigating fact for departure purposes. Such a fact may be used to support a departure only if it makes the crime of conviction significantly different from the usual criminal conduct which the presumptive sentence is intended to punish.
>
> "\* \* \* \* \*
>
> "In very rare cases, facts that constitute an element of the crime, or a basis for subclassifying the offense on the Crime Seriousness Scale, can be used if the actual conduct represented by that aspect of the current crime of conviction is significantly different from the usual criminal conduct represented by that aspect of the crime."

Oregon Sentencing Guidelines Implementation Manual at 132-33.

Defendant asserts that the trial court erred by allowing the state to rely on the "use of a dangerous weapon" aggravating factor because the "usual criminal conduct" captured by murder involves the use of a dangerous weapon. That is, defendant argues that, because a factual aspect of the crime he committed—*i.e.*, use of a weapon—"with rare exception" is "integral" to the offense of murder, OAR 213-008-0002(2) precludes the state from using it to enhance defendant's sentence. In support, defendant relies on *State v. Guthrie*, 112 Or App 102, 828 P2d 462 (1992), which he claims stands for the proposition that the state cannot rely on an enhancement fact that is "integral" to the charged crime, even if those facts are not "express[] statutory elements."

The state responds that the crime of murder, as defined in ORS 163.115(1)(a) (1989), does not include the use of a weapon as a statutory element of the crime. Thus, in the state's view, applying "use of a dangerous weapon" as a factor to support an upward departure on a murder conviction does not violate OAR 213-008-0002(2).

We agree with the state. Defendant's argument calls on us to interpret the prohibition in OAR 213-008-0002(2) in accordance with our normal methods of statutory interpretation. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (explaining statutory construction methodology); *see also State v. Dilts*, 336 Or 158, 162, 82 P3d 593 (2003), *vac'd and rem'd sub nom Dilts v. Oregon*, 542 US 934, 124 S Ct 2906, 159 L Ed 2d 809 (2004) (sentencing guidelines "have the authority of statutory law"). When we apply that methodology, defendant's argument fails to account for the plain text of OAR 213-008-0002(2), which is explicitly limited to factual aspects of a crime that are "a statutory element of the crime" or are "used to subclassify the crime on the Crime Seriousness Scale." Even if the legislative history could be understood to express a policy that is consistent with defendant's argument, "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature understood to give expression to its wishes." *Gaines*, 346 Or at 171 (internal quotation marks omitted). And in this instance, the plain text of OAR 213-008-0002(2) applies only to statutory elements of the crime or a fact used to subclassify the crime on the crime seriousness scale. Under ORS 163.115 (1989),[5] murder does not contain "use of a weapon" as a statutory element. Further, there are no subclassifications for murder on the crime seriousness scale.

Defendant's reliance on *Guthrie* is misplaced. In *Guthrie*, the defendant was convicted of attempted murder, first-degree assault, fourth-degree assault, and carrying a concealed weapon. 112 Or App at 104. The court imposed an upward departure sentence on the convictions for attempted murder and first-degree assault based on the aggravating factors of violence toward the victim, use of a weapon, permanent injury to the victim, persistent involvement in similar offenses, and prison discipline problems. On appeal, the state conceded that the sentencing court had erred in relying on the first three factors because they were elements

---

[5] As applicable to this case, murder under ORS 163.115(1) (1989) is committed when a person intentionally causes the death of another human being without justification or excuse. Accordingly, use of weapon is not a required element of murder under ORS 163.115 (1989).

of first-degree assault. *Id.* at 106. In accepting the state's concession, we stated that, under OAR 213-008-0002(2), "a factual aspect of a crime may not be used as an aggravating factor unless the aspect is 'significantly different from the usual criminal conduct captured by the aspect of the crime.'" *Id.* (quoting OAR 213-008-0002(2)). From that statement, and from the fact that "serious physical injury" is an element of first-degree assault, which is not the same as the finding of "permanent injury" that was relied on by the trial court in *Guthrie* to impose a departure sentence, defendant asserts that *Guthrie* recognizes that permitting an upward departure based on facts that are integral to the charged crime is impermissible, even if those facts are not "express[] statutory elements."

We are not persuaded by defendant's argument. *Guthrie* involved a state concession that three of the factors relied on by the sentencing court *were elements* of first-degree assault. *Id.* We accepted that concession without discussion, and then noted that "a factual aspect of a crime" cannot be used as an aggravating factor "unless the aspect is 'significantly different from the usual criminal conduct captured by the aspect of the crime.'" *Id.* (quoting OAR 213-008-0002(2)). In doing so, we were simply reiterating the concept that in "limited circumstances" a statutory element (or a fact that could be used to subclassify a crime) *could be* used as an aggravating factor under OAR 213-008-0002(2). We then noted that the sentencing court had not explained "any significant differences," and, accordingly, remanded for resentencing. *Id.* Thus, our application of the law in *Guthrie* is consistent with the plain text of OAR 213-008-0002(2).

B. *Was it error to depart based on "use of a dangerous weapon" aggravating factor?*

In his second and third assignments, defendant asserts that, even if the state's reliance on "use of a dangerous weapon" was not precluded by OAR 213-008-0002(2), the court's decision to impose an upward departure sentence was error. We discuss those assignments together because, even though they present distinct legal arguments, they involve related concepts. Accordingly, we briefly outline defendant's second and third assignments, set out the

relevant legal framework and the court's on-the-record reasons for imposing a departure sentence, and then discuss the assignments.

In his second assignment of error, defendant asserts that the trial court impermissibly imposed a departure sentence based on "offender based findings" (*i.e.*, other aggravating factors) that (1) defendant did not receive notice of and (2) were not alleged and proved beyond a reasonable doubt by the state. That is, defendant asserts that, even though the only aggravating factor that the state alleged and proved was "use of a dangerous weapon," the court impermissibly relied on other unalleged and unproven factors when it decided that there were substantial and compelling reasons to impose an upward departure sentence. Defendant's third assignment claims that, even if the court relied only on "use of a dangerous weapon" to impose an upward departure sentence, the court's explanation is flawed as to why defendant's use of a dangerous weapon in this case constitutes a substantial and compelling basis to impose an upward departure sentence.

Because it provides necessary context to the discussion that follows, we revisit and expand our discussion of the sentencing guidelines and departure sentences.

As noted, in 1989, the legislature approved felony sentencing guidelines recommended by the Oregon Criminal Justice Commission to provide greater uniformity in sentencing. 280 Or App at 51-52. To promote that goal, the presumptive sentences contained in the guidelines were based on the "general seriousness of the offense and the specific offender's criminal history." *Speedis*, 350 Or at 427. As such, the guidelines "start from the premise that the presumptive sentence ordinarily will be the appropriate sentence." *Id.* at 427-28. Nevertheless, the legislature also recognized that the general seriousness of a crime and the offender's criminal history "may not always capture either the seriousness of a particular offense or all the relevant aspects of an offender's character." *Id.* at 428. Accordingly, the guidelines recognize that, where a particular fact related to the offense or offender provides a "substantial and compelling reason" to do so, a court has the discretion to depart from

the presumptive sentence. *Id.* at 427. However, because the presumptive sentence "ordinarily will be the appropriate sentence," *id.* at 428, the guidelines provide that, "[i]f the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure." OAR 213-008-0001.

The guidelines provide a nonexclusive list of nine mitigating and 12 aggravating factors that could justify imposing a lesser or a greater sentence than the presumptive sentence. OAR 213-008-0002(1). Those factors are split between factors that go to the seriousness of the offense (offense-based factors)[6] and factors that go to the character or culpability of the specific offender (offender-based factors).[7] Moreover, the list is nonexclusive to account for the fact that "case-specific factors may arise in individual cases that bear on either the seriousness of the offense or the character of the offender that the [commission] did not anticipate." *Speedis*, 350 Or at 428.

One other aspect of the departure scheme bears mention before discussing defendant's assignments of error. In 2005, in response to the landmark United States Supreme Court decisions in *Apprendi v. New Jersey,* 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely,*[8] the legislature enacted ORS 136.760 to 136.792 to "establish

---

[6] An example of an offense-based factor that would permit a court to impose either a downward or upward departure sentence is when "the harm or loss attributable to a particular offense is either significantly less or significantly greater than is typical." *Speedis,* 350 Or at 428 (citing OAR 213-008-0002(1)(a)(G), (1)(b)(J)).

[7] An example of an offender-based factor that would allow a downward departure is where a defendant acted with diminished mental capacity. *Speedis,* 350 Or at 428 (citing OAR 213-008-0002(1)(a)(C)).

[8] The Court held in *Apprendi* that, under the jury-trial right in the Sixth Amendment to the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 US at 490. In *Blakely,* the Court further explained that, under Washington's sentencing scheme (which, in the context of *Blakely,* is materially indistinguishable from Oregon's sentencing scheme), the prescribed statutory maximum is the sentencing guidelines' presumptive sentence. 542 US at 304. Accordingly, in *Blakely,* the Court established that a sentencing court violates a defendant's Sixth Amendment jury-trial right when it imposes an upward departure sentence based on facts that were not found by the jury. *Id.*

procedures for determining whether, in a particular case, an aggravating factor exists that will warrant" an upward departure sentence. *Speedis*, 350 Or at 429. Initially, the state must provide the defendant notice of its intention to rely on an "enhancement fact."[9] *See* ORS 136.765 (providing that, "[i]n order to rely on an enhancement fact to increase the sentence * * *, the state shall notify the defendant of its intention to rely on the enhancement fact"). The statutes require the court to submit "the enhancement fact" to the jury unless, among other things, the defendant waives the right to a jury trial on the enhancement fact and either admits to the fact or elects to have the enhancement fact tried to the court. *See* ORS 136.770; ORS 136.773.

In sum, the state must provide the defendant with notice of any aggravating factor that it intends to rely on to seek an upward departure sentence and prove that factor beyond a reasonable doubt to a jury unless the defendant waives his or her jury-trial right. ORS 136.765 (notice); ORS 136.785 (burden of proof). The sentencing guidelines require the sentencing court to impose the presumptive sentence provided by the guidelines "unless the judge finds substantial and compelling reasons to impose a departure[,]" and the court makes on-the-record findings explaining the substantial and compelling reasons for the departure. OAR 213-008-0001.

Our review of departure sentences is subject to ORS 138.222(3):

"In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive [guidelines] sentence * * *, sentence review is limited to whether the sentencing court's findings of fact and reasons justifying a departure from the [presumptive guidelines sentence]:

"(a) Are supported by the evidence in the record; and

"(b) Constitute substantial and compelling reasons for departure."

---

[9] An "enhancement fact" is "a fact that is constitutionally required to be found by a jury in order to increase the sentence that may be imposed upon conviction of a crime." ORS 136.760(2). For our purpose in this opinion, "enhancement fact" and "aggravating factor" are interchangeable.

"We review to determine whether the court's findings of fact and reasons justifying the departure are supported by the evidence in the record and constitute substantial and compelling reasons to depart as a matter of law." *State v. Watkins*, 146 Or App 338, 340, 932 P2d 107, *rev den*, 325 Or 438 (1997). "In determining whether a factor constitutes a substantial and compelling reason for departure, we look at whether 'exceptional circumstances [exist that] overcome the presumption that the [presumptive] sentence accomplishes the purposes of the guidelines.'" *State v. Rhoades*, 210 Or App 280, 284-85, 149 P3d 1259 (2006) (quoting *State v. Parsons*, 135 Or App 188, 191, 897 P2d 1197, *rev den*, 322 Or 168 (1995)) (brackets in *Rhoades*). The purposes of the guidelines are primarily "to punish each offender appropriately, and to insure the security of the people in person and property, within the limits of correctional resources provided by the Legislative Assembly, local governments and the people." OAR 213-002-0001(1). If the sentencing court's explanation does not demonstrate why the circumstances are so exceptional that the imposition of the presumptive sentence would not accomplish the purposes of the guidelines, we must remand for resentencing. *Rhoades*, 210 Or at 285.

In this case, because the sentencing court's on-the-record explanation for its upward departure is essential to our analysis, we quote it at length.

The court began by acknowledging that it was undisputed that defendant used a dangerous weapon to commit the murder of the victim. The court then addressed defendant's "choice of weapon," the manner in which he used the weapon, and how it caused defendant to come into close contact with the victim during the murder and resulted in increased pain and suffering to the victim:

"To begin with, the choice of weapon that [defendant] used was important to the Court's ultimate decision here. And by that, I want to get into just a brief summary or description of it.

"It was described as a relatively small Boy Scout knife. The significance of the weapon chosen is that, one, it did cause the Court to consider a departure in that that weapon

of choice required defendant to become in very close proximity to his victim. And just by way of a brief example, if he had used a gun, a gun you can be a good distance away. If he'd used a big knife—I've had murder cases before where people have stabbed each other and it's usually a very quick one or two stabs. And I hate to be so graphic, but it's important to understand what the Court's reasoning is. And so I'm differentiating between something that was done with a large knife. And it was clear to me from the evidence that was presented that the knife he used wasn't big enough to accomplish a quick sort of stab to the heart or other vital organ.

"So the type of weapon that was used is relevant and significant to the extent that to accomplish what [defendant] set out to do, which is to kill [the victim], he had to use the knife in a manner that required him to get extremely close; so close that the description was that he straddled her, jerked her head back, and began sawing or cutting away. And it's so graphic it's hard to even articulate some of these things, but it is necessary for the findings that I need to make.

"As we all know and have heard, this went on for some time, until she was nearly decapitated. * * * The intimacy of this small weapon and the manner in which [defendant] chose to use it is, in this Court's opinion, something that caused an increased amount of contact and an increased amount of pain and suffering to [the victim].

"In addition, it created this horrific mechanism of injury and death. So it is significant the type of weapon used and the manner in which it was used and the choices that were made by [defendant] to act in the manner he did, which was really, in this judge's estimation, one of the most incredibly difficult scenarios to envision or to view when it came to the evidence.

"The most difficult question that this judge has pondered is how could anyone, especially a 16-year-old who was characterized as a good kid, a smart kid, accomplish a murder that required that much physical contact over such a prolonged period of time and not be absolutely sickened? And when I say 'sickened,' I mean physically retching, vomiting. It just bewilders me how [defendant] could have acted in such a detached and unemotional manner when there was such a disgusting amount of blood loss and the

remains of it and the scene were so horrific. It's just—that is really bewildering and troubling and the basis for the Court's departure in many ways.

"I have seen many murder cases, but I have to agree with the experts who testified for the State who have more experiences than I do in homicide investigations and forensic investigations. But it truly was and hopefully will be the worst I've ever seen, because I can't imagine anything worse than that."

The court then proceeded to address its finding that defendant lacked empathy:

"The Court has been troubled from the beginning by what was an obvious lack of empathy. And the empathy issue is the one that is most overriding the Court's concerns about the ultimate safety of the public and whether rehabilitation has occurred over the past 21 years.

"The Court's obligation is to analyze and evaluate and try to do some sort of risk assessment in reaching a goal, which is to hopefully ensure the safety of the public. And there are many, many outward objective signs that [defendant] is capable of educating himself, of being a leader in terms of service projects, of not having write-ups at the Department of Corrections. There's a number of outward signs that were presented.

"\* \* \* \* \*

"The most important point, though, for the Court, and the most concerning issue for this judge is the lack of empathy that obviously allowed for him to heartlessly and callously act in the manner he did some 21-plus years ago.

"So I started to really focus through the evidence on the various reports and ideas that, first of all, juveniles are given the benefit of the doubt, and there is that notion that overrides. It isn't one, though, that requires the Court to completely ignore what I think is clear evidence of continuing lack of empathy. And the evidence of that was scattered but certainly there throughout the record."

The court then recounted evidence of instances close in time to defendant's initial incarceration (*i.e.*, when defendant was "17 or 18 years old, maybe 19 at the most") in which defendant "was noted to have a lack of empathy, a lack

of remorse, a lack of insight, a detachment as he recounted the act." The court also cited an evaluation close to the time of the sentencing trial in which defendant characterized what he did as a "mistake." The court found defendant's characterization "extremely concerning," explaining that "the minimization of that description and characterization of this brutal killing, again concerns the Court and demonstrates a lack of empathy for [the victim] and her loved ones, and anybody else who was impacted, including his own family." The court concluded that "that lack of empathy that the Court finds is still existing today is the reason the Court is going to make a very significant departure." The court proceeded to announce a 600-month departure sentence.

As noted, in defendant's second assignment of error, he complains that the court's on-the-record findings demonstrate that the court, in deciding that there were substantial and compelling reasons to depart, relied on aggravating factors other than his use of a dangerous weapon—namely, defendant's "detached and unemotional" conduct during the crime and his lack of empathy. Defendant explains that the state gave him notice, as required by ORS 136.765(2), that it intended to prove use of a dangerous weapon and "deliberate cruelty" as aggravating factors justifying a departure. The court, however, found that the state failed to prove deliberate cruelty, so the only legitimate basis for the court's departure was defendant's use of a dangerous weapon. According to defendant, if an aggravating factor is found to exist, the court may enhance the defendant's sentence if it concludes that *that aggravating factor* provides a substantial and compelling reason for doing so. Defendant maintains that, here, the court relied on offender-based factors of which the state had failed to provide notice to defendant as the basis for imposing an upward departure sentence.

We agree with defendant's legal argument that aggravating factors that were not included in the state's notice to defendant and that were not proved beyond a reasonable doubt may not be used by the sentencing court as a substantial and compelling reason to impose an upward departure sentence. The plain text of ORS 137.765 provides that, "[i]*n order to rely on* an enhancement fact to increase the sentence," the state "*shall notify* the defendant

of its intention to rely on *the enhancement fact*." (Emphases added.) Noting that provision, the Supreme Court explained in *Speedis* that,

> "once the prosecutor notified defendant of the specific aggravating facts on which the state intended to rely, the jury and the trial court had a limited role to play. The question for the jury was whether the state had proved beyond a reasonable doubt the specific aggravating factors that the prosecutor had identified. Once the jury found that the state had proved those factors, then the question for the trial court was whether those factors, individually or collectively, provided a substantial and compelling reason for imposing an upward departure sentence. The trial court had no discretion to decide whether other aggravating factors (either enumerated or nonenumerated) might apply."

350 Or at 436. Thus, defendant is correct that, when deciding whether a substantial and compelling reason justified an upward departure, the court was limited to consideration of the only aggravating factor that was alleged and proved by the state, *i.e.*, use of a dangerous weapon.

The harder question is whether the court considered more than defendant's "use of a dangerous weapon" in making its substantial and compelling reason determination in this case. Defendant asserts that the court's on-the-record findings demonstrate that the court impermissibly relied on defendant's "detached" emotional state during his commission of the crime and defendant's demonstrated lack of empathy as reasons to impose a departure sentence. He argues that his emotional state and lack of empathy relate to his character or culpability (*i.e.*, "offender-based" factors) and not the seriousness of the offense. Further, defendant argues that the state did not give notice that it intended to rely on either of those factors to justify a departure sentence and, citing *Blakely*, *Apprendi*, and *Dilts*, contends that the court's reliance on those factors in deciding to impose a departure sentence violates his statutory and constitutional rights.

The state takes a different view of the court's on-the-record explanation. It asserts that, once the factfinder determines that an aggravating factor has been proved as true in fact, the sentencing court must make a legal determination

whether that factor constitutes a substantial and compelling reason to justify departure. Once the court determines that a departure is legally permissible, "the third and final step is a discretionary one: *whether* to depart and, if so, by *how much*." According to the state, in this case, defendant's use of a dangerous weapon was uncontested. Once that aggravating factor was established, the court concluded that, in the context of using a small, dull knife to brutally murder the victim, the aggravating factor was sufficient to justify, as a matter of law, an upward departure. The state further argues that, once the court properly concluded that a departure was justified, the court took into account "various other considerations," including defendant's lack of empathy, to exercise its discretion to depart, and to determine the length of the departure. The state concludes that any reliance by the court on defendant's lack of empathy was appropriate because, once the court (acting as factfinder) had found an aggravating factor that justified departure, the sentencing court was free to take "into consideration various factors relating both to the offense and offender" when exercising discretion to impose a sentence within the new "statutory maximum."

Accordingly, the parties fundamentally disagree about the court's on-the-record findings. Defendant understands the court to have relied on his use of a dangerous weapon, detached emotional state, and lack of empathy to reach the conclusion that substantial and compelling reasons existed to impose a departure sentence. Conversely, the state contends that the court found substantial and compelling reasons to depart based solely on defendant's "use of a dangerous weapon" and that the court's findings regarding defendant's emotional state and lack of empathy were considerations the court used to determine the length of the upward departure.[10]

Frankly, it is unclear from the court's on-the-record explanation whether the court limited its "substantial and

---

[10] We need not decide in this case whether a sentencing court, having concluded that substantial and compelling reasons support an upward departure sentence, can consider factors other than an aggravating factor proved beyond a reasonable doubt to decide the length of any upward departure sentence.

compelling reasons" decision to the "use of a dangerous weapon" aggravating factor. As noted, 280 Or App at 62-63, because that factor was the only one that the state proved, the court was limited to deciding whether that factor (and that factor alone) provided a substantial and compelling reason to impose a departure sentence. We cannot tell with certainty from the court's explanation whether it also took into consideration what defendant terms as "offender-based factors"—*i.e.*, defendant's "lack of empathy" and his detached emotional state during commission of the crime.

On the one hand, the court explicitly stated that defendant's lack of empathy is the issue "*that is most over-riding the court's concerns about the ultimate safety of the public and whether rehabilitation has occurred over the past 21 years.*" The court further stated that "[t]he most important point *** for the court, and the most concerning issue for this judge is the lack of empathy that obviously allowed for him to heartlessly and callously act in the manner he did some 21-plus years ago." The court also cited the "detached and unemotional manner" in which defendant committed the crime as "the basis for the court's departure in many ways." On the other hand, it is possible to understand the court's citation to defendant's lack of empathy and detached emotional state as the reason for the length of the departure sentence that it ultimately imposed, rather than as part of the substantial and compelling reason to impose a departure in the first place. Given that uncertainty, which raises the distinct possibility that the court impermissibly relied on factors beyond defendant's use of a dangerous weapon, we must remand for resentencing. *Cf. State v. Enemesio*, 233 Or App 156, 162, 225 P3d 115, *rev den*, 348 Or 414 (2010) ("[W]e must remand for resentencing if the trial court incorrectly applied any single aggravating factor.").

Given our conclusion that defendant's second assignment of error warrants a remand, normally our analysis would end. However, defendant's third assignment of error presents issues that are likely to arise on remand. Accordingly, we proceed to address that assignment. *See State v. Agee*, 358 Or 325, 361, 364 P3d 971 (2015) (addressing issues likely to arise on remand in further penalty phase proceeding).

In his third assignment, defendant maintains that, even if the court relied solely on the "use of a dangerous weapon" factor to impose a departure sentence, the court's explanation does not establish why defendant's use of a dangerous weapon in this case made this crime different from the circumstances "envisioned by the legislature when it established the presumptive sentence" for murder. He argues that, as a general matter, murder is a violent and tragic crime that (1) usually involves the "use of a dangerous weapon," (2) results in a graphic and upsetting crime scene, (3) results in a loss of life that is "inexplicable, incomprehensible and generally leaves a number of living victims behind," (4) rarely results in instantaneous death, and (5) is frequently accompanied by other criminal conduct for which the defendant is separately punished.

Defendant points to the circumstances of his crime. He notes that he retrieved his Boy Scout knife with the intent to threaten the victim into submitting to rape. When a struggle ensued, defendant, motivated by anger and self-preservation, formed the intent to murder the victim. The knife was an "inefficient" murder weapon, and, according to the medical examiner, the damage to the victim's neck took "a minute or so" to accomplish, and the victim was probably unconscious between "30 seconds, 40 seconds" after her artery was severed. The examiner also testified that, although the victim suffered an "extremely painful" death, severing an artery is less painful than knife injuries to the neck that inflict superficial wounds. Defendant further explains that the court, in determining that defendant did not act with deliberate cruelty, concluded that once defendant formed the intent to commit murder his focus was on ending her life using the weapon he had with him.

Defendant argues that those circumstances, as they relate to the aggravating factor of "use of a dangerous weapon," do not make his crime of murder different from the circumstances of murder that were envisioned by the legislature when it set the presumptive sentence. To that point, defendant asserts that the court's explanation fails in a number of ways.

First, according to defendant, the court's reasoning "punishes defendant for failing to act with sufficient premeditation to bring a more *efficient* dangerous weapon to the scene." Defendant points out that, as the court had previously found, at the time defendant "chose" his knife, he intended to bring it to the scene to accomplish a rape. By relying on defendant's choice of weapon, defendant asserts that the court "essentially found that defendant would be less culpable had he brought (and used) a firearm or machete, even though bringing such weapons would have communicated a far greater awareness that the encounter could turn lethal."

Second, defendant claims that there is no basis for the court's conclusion that defendant's use of a dangerous weapon led to greater "pain and suffering" than is ordinarily experienced during a murder, because the legislature "certainly envisioned that a person being murdered would suffer greatly in the time prior to death." He also maintains that there is no basis to conclude that defendant's use of a dangerous weapon to commit murder created greater pain and suffering than it would have had he not used a weapon at all, or had he used some other type of weapon. Similarly, he argues that it is unlikely that the legislature envisioned only murders that resulted in instantaneous death when it set the presumptive term for murder, so the fact that his use of a dangerous weapon did not result in instantaneous death fails to support the court's ultimate conclusion to depart.

Third, defendant allows that the resulting crime scene was "unquestionably graphic and upsetting; perhaps far more graphic than the scene at other murders." Nevertheless, defendant asserts that "[t]he upsetting crime scene * * * is not an appropriate basis upon which to depart."

In sum, defendant claims that the court's explanation "flips the logical purpose of a 'use of a dangerous weapon' enhancement on its head," because it punished defendant "more for his lesser degree of premeditation and preparedness" and "[u]nquestionably, the legislature envisioned that greater premeditation would be punished more severely than lesser [premeditation]."

The state responds that, "in the particular context of this case, the aggravating factor was sufficient to justify, as a matter of law, an upward departure sentence." In the state's view, the "context" is what supports the court's conclusion that substantial and compelling reasons existed to depart. In particular, defendant's use of a dangerous weapon was an exceptional circumstance because he made a "considered choice of a small knife" and chose to wield it in an "intimate" and horrific manner against the victim, including sawing at her throat and almost decapitating her. In short, it was the type of dangerous weapon and the manner in which defendant used it that placed the circumstances here outside of the usual circumstances that the legislature would have contemplated when establishing the presumptive sentence for murder.

As noted, we must remand for resentencing if the court's explanation of substantial and compelling reasons fails to demonstrate why the particular aggravating factor alleged and proved by the state created a circumstance so exceptional that imposition of the presumptive sentence would not accomplish the purposes of the guidelines. *State v. Wilson*, 111 Or App 147, 151, 826 P2d 1010 (1992). We review for legal error whether the court's reasons justifying the departure constitute substantial and compelling reasons. *State v. Wolff*, 174 Or App 367, 369, 27 P3d 145 (2001). The question before us is limited to examining for legal error the court's explanation of why defendant's use of a dangerous weapon created exceptional circumstances outside of what the legislature contemplated when it set the presumptive sentence.

Given the court's findings regarding the circumstances of defendant's crime, we conclude that the court's explanation fails to demonstrate why defendant's use of a dangerous weapon justified departure. First, the court's reliance on defendant's "choice" of a small, dull knife does not support the court's conclusion that "substantial and compelling" reasons exist to justify departure. Although a defendant's choice of a dangerous weapon in some circumstances could support such a conclusion, we agree with defendant that, in the circumstances of this case—where the court

concluded that, at the time that defendant chose his weapon, he intended to rape the victim and did not form the intent to murder her until after she resisted—the court's reliance on the defendant's choice of weapon (giving the timing of his choice) punishes defendant for acting with "less premeditation" than if he had chosen a more "efficient" weapon to commit murder.

We also agree with defendant that the court's explanation that his use of a dangerous weapon resulted in an "increased amount of pain and suffering" to the victim is insufficient to justify the court's decision to depart. Although there certainly was evidence that the victim suffered an extremely painful death, the evidence does not establish that defendant's use of a dangerous weapon in this case created pain and suffering of a magnitude beyond what the legislature envisioned when it set the presumptive sentence for murder. We reiterate that the particular aggravating factor proved by the state must provide the "exceptional circumstances" that make a particular crime worthy of a departure sentence. Here, the trial court's explanation does not establish why defendant's use of a dangerous weapon caused more pain and suffering than the legislature would have contemplated when setting the term for murder.

To be clear, we are not holding that a defendant's use of a dangerous weapon could not, as a matter of law, justify a departure sentence. Rather, we conclude that the court's explanation here regarding defendant's choice of a small, dull knife and the "increased pain and suffering" experienced by the victim as a result is insufficient to demonstrate why defendant's use of a dangerous weapon in this case created circumstances so exceptional that the imposition of a presumptive sentence would not accomplish the purposes of the guidelines.

C.  *Defendant's Proportionality Arguments*

As noted, defendant also challenged his sentence as violating the "proportionality principles" of Article I, section 16, of the Oregon Constitution, and the Eighth Amendment to the United States Constitution. In his reply brief, defendant asserts that, because he "has already served a sentence

greater than he believes is permitted by either Article I, section 16, or the Eighth Amendment," if we remand for resentencing, we must address defendant's proportionality challenge because it will dictate the scope of any remand for resentencing on the use of a dangerous weapon.

We disagree. Proportionality challenges require us to evaluate, among other things, the severity of the penalty and the gravity of the crime. *State v. Rodriguez/Buck*, 347 Or 46, 60, 217 P3d 659 (2009). Here, given our remand for resentencing, there is no penalty to evaluate; accordingly, any proportionality analysis at this point would be advisory in nature. We note, however, that, in *Davilla III*, we explained, citing *State v. Shumway*, 291 Or 153, 630 P2d 796 (1981), that "[a] statutory scheme under which defendant would receive a more severe sentence for murder than he would for aggravated murder violates Article I, section 16." *Davilla III*, 157 Or App at 646.

Remanded for resentencing.