Argued and submitted September 10, 2018, reversed and remanded for
resentencing March 11, 2020

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## TODD DANIEL DAVILLA,
*Defendant-Appellant.*

### Clackamas County Circuit Court
CR9200004; A165390

462 P3d 748

Defendant appeals a judgment of conviction for one count each of murder, ORS 163.115, first-degree burglary, ORS 164.225, and attempted first-degree rape, ORS 163.375; ORS 161.405. Defendant, who was 16-years-old when he murdered the victim, contends that the 600-month term of incarceration imposed by the trial court violates the Eighth Amendment to the United States Constitution based on the principles articulated by the United States Supreme Court in *Roper v. Simmons*, 543 US 551, 125 S Ct 1183, 161 L Ed 2d 1 (2005), *Graham v. Florida*, 560 US 48, 130 S Ct 2011, 176 L Ed 2d 825 (2010), *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012), and *Montgomery v. Louisiana*, ___ US ___, ___, 136 S Ct 718, 193 L Ed 2d 599 (2016). *Held*: Because the sentencing court's decision did not reflect that it took "into account how children are different [than adults], and how those differences counsel against irrevocably sentencing [defendant] to a [de facto] lifetime in prison," the Court of Appeals concluded that defendant's sentence violates the Eighth Amendment. *Miller*, 567 US at 480.

Reversed and remanded for resentencing.

Eve L. Miller, Judge.

Kendra M. Matthews argued the cause for appellant. Also on the briefs was Boise Matthews LLP.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Frederick M. Boss, Deputy Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

TOOKEY, J.

Reversed and remanded for resentencing.

**TOOKEY, J.**

This case has a long history. Defendant appeals a Fifth Amended Judgment of conviction for one count each of murder, ORS 163.115, first-degree burglary, ORS 164.225, and attempted first-degree rape, ORS 163.375; ORS 161.405, that was entered following his most recent resentencing in 2017. We write only to address defendant's fifth assignment of error because defendant is entitled to resentencing based on that error. In his fifth assignment of error, defendant, who was 16-years-old when he murdered the victim, contends that the 600-month term of incarceration imposed by the trial court violates the Eighth Amendment to the United States Constitution based on the principles articulated by the United States Supreme Court in *Montgomery v. Louisiana*, ___ US ___, 136 S Ct 718, 193 L Ed 2d 599 (2016); *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012); *Graham v. Florida*, 560 US 48, 130 S Ct 2011, 176 L Ed 2d 825 (2010); and *Roper v. Simmons*, 543 US 551, 125 S Ct 1183, 161 L Ed 2d 1 (2005).[1]

Because the sentencing court's decision does not reflect that it took "into account how children are different, and how those differences counsel against irrevocably sentencing [defendant] to a [de facto] lifetime in prison," we conclude that defendant's sentence violates the Eighth Amendment. *Miller*, 567 US at 480; *see White v. Premo*, 365 Or 1, 15, 443 P3d 597 (2019) ("We know of no state high court that has held that a sentence in excess of 50 years for a single homicide provides a juvenile with a meaningful opportunity for release."). Accordingly, we reverse and remand for resentencing.

The pertinent facts are mostly procedural and undisputed. "Defendant was 16 years old on August 13, 1991, when he attempted to rape the victim and then murdered her, nearly decapitating her." *State v. Davilla*, 121 Or

[1] The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Due Process Clause of the Fourteenth Amendment to the United States Constitution "makes the Eighth Amendment's prohibition against *** cruel and unusual punishments applicable to the States." *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 US 424, 433-34, 121 S Ct 1678, 149 L Ed 2d 674 (2001).

App 583, 585, 855 P2d 1160, *adh'd to on recons*, 124 Or App 87, 860 P2d 894 (1993), *rev den*, 318 Or 351 (1994). "He was originally charged by petitions filed in juvenile court with committing offenses which, if committed by an adult, would constitute the crimes of aggravated murder (four counts), murder (one count), burglary in the first degree (five counts) and attempted rape in the first degree (two counts)." *Id*. Given defendant's age, the state moved to remand the case from juvenile to circuit court and defendant "agreed not to oppose remand and to plead guilty to murder, ORS 163.115 (1989), first-degree burglary, ORS 164.225 (1989), and first-degree attempted rape, ORS 161.405 (1989), ORS 163.375 (1989), in exchange for the state's agreement not to prosecute him for aggravated murder." *State v. Davilla*, 280 Or App 43, 46, 380 P3d 1003 (2016).

Over the past 25 years, defendant has challenged various aspects of the sentences that he has received for his murder conviction on appeal, resulting in multiple resentencing hearings. We only discuss the facts that relate to defendant's most recent resentencing proceeding, because the other proceedings are not germane to the issue that we resolve in this appeal. *See id.* at 46-51 (summarizing the procedural history of this case).

In this resentencing hearing, the parties agreed that the presumptive guidelines sentence for defendant's murder conviction is 120-121 months' imprisonment.[2] In the

---

[2] ORS 163.115(3) (1989) provided that a person convicted of murder "shall be punished by imprisonment for life," but also provided for eligibility for parole or work release after 10 or 25 years. However, as we noted in one of defendant's previous appeals, "the Supreme Court held that as a result of legislative changes in 1989, * * * a juvenile remanded to adult court cannot receive a mandatory minimum sentence or an indeterminate sentence for life" under ORS 163.115 (1989). *State v. Davilla*, 157 Or App 639, 644, 972 P2d 902 (1998), *rev den*, 334 Or 76 (2002) (citing *State v. Morgan*, 316 Or 553, 560, 856 P2d 612 (1993), *State v. Jones*, 315 Or 225, 230-32, 844 P2d 188 (1992)). Accordingly, we have directed the sentencing court in this case "to impose sentence under the guidelines." *Id*. at 645.

Under the sentencing guidelines, defendant's presumptive sentence is 120-121 months' imprisonment because his murder conviction had a crime seriousness level of "11" and he had a criminal history score of "I." Furthermore, prior to 1993, the 200% rule that caps upward departures to no "more than double the maximum duration of the presumptive prison term" did not apply to defendant's murder conviction. OAR 253-08-003(2) (1993); *see* OAR 253-08-004(2) (1989) ("The limit on durational departures * * * does not apply to any sentence imposed for a conviction of ORS 163.115 Murder."); *Davilla*, 157 Or App at 646, 647 n 9

state's sentencing memorandum, it argued that the sentencing court could impose a 600-month upward departure sentence under the sentencing guidelines "based on the 'dangerous weapon' aggravating factor," because the use of the "weapon made the circumstances of this case so exceptional that the presumptive sentence would not accomplish the purposes of the guidelines."

In response, defendant argued that "the state ha[d] not demonstrated a substantial and compelling basis to depart based on defendant's use of a dangerous weapon in an intentional murder," because "defendant's use of a dangerous weapon to commit an intentional murder is not exceptional." Defendant also contended, among other points, that a 600-month sentence would violate the Eighth Amendment, and that the court must take into consideration the expert testimony that he presented about the mitigating qualities of his youth at the time that he committed the murder and the evidence that he presented demonstrating his good conduct and efforts at rehabilitation while incarcerated under the reasoning articulated by the Supreme Court in *Miller*, 567 US 460. Defendant, pointing to *Montgomery*, ___ US at ___, 136 S Ct at 734-36, also noted that the Court has reiterated "that children who commit even heinous crimes are capable of change," and, thus, juveniles whose crimes were a product of their youth must be given a meaningful opportunity for release.

The sentencing court imposed the 600-month sentence, finding that "the state has proven [beyond a reasonable doubt that] the use of a weapon provides a substantial and compelling reason to depart," and it made extensive findings concerning the horrific details surrounding defendant's use of the knife during the murder to explain why that factor justified an upward departure. The court also rejected defendant's argument that a 600-month sentence is an unconstitutional punishment.[3]

---

(discussing how "[t]he limitations on departures for murder continue to be in existence today for crimes committed after November 1, 1993," but noting that there is a constitutional "ceiling on the sentence that the court can impose" on defendant under the guidelines because the 200% rule does not apply).

[3] After the court pronounced that it would impose the 600-month sentence, defendant argued that "[t]he court's ruling also amounts to a ruling that this

On appeal, in his opening brief, defendant cited the principles of transient immaturity and rehabilitation that the Supreme Court stressed in *Roper*, *Graham*, *Miller*, and *Montgomery* to support his argument that the 600-month sentence should be reversed because "defendant is precisely the type of juvenile offender envisioned by these cases." Defendant then filed a supplemental memorandum of additional authorities, observing that the Oregon appellate courts have discussed *Miller* extensively and applied those principles in *White*, 365 Or 1, and *State v. Link*, 297 Or App 126, 441 P3d 664, *rev allowed*, 365 Or 556 (2019). Defendant contends that, pursuant to the principles and reasoning discussed in those cases, we "should conclude that, before imposing such an extraordinarily long term, the trial court was required to give due consideration to the science supporting the conclusions underpinning *Miller* and, demonstrably, engage in a *Miller* analysis."[4]

We only briefly point out some of the case law underlying *Miller* here, because recent Oregon appellate court decisions have discussed the genesis of *Miller* at length. *See White*, 365 Or at 7-10 (discussing "the genesis of *Miller*" and "the state of the law before *Miller* was decided in 2012" (citing *Roper*, 543 US at 569-74 (observing that differences

---

juvenile offender cannot do anything as a practical matter to demonstrate rehabilitation because of the acts he took as a juvenile," and that "that *** conclusion is [inconsistent] with the *** United States Supreme Court directive that we have that juveniles can be rehabilitated."

[4] In defendant's last appeal, we declined to address defendant's argument that the same 600-month sentence was unconstitutional under Article I, section 16, of the Oregon Constitution, and the Eighth Amendment given our need to remand for resentencing on other grounds. We do so now in light of the novel developments in constitutional law that limit the availability of sentences that do not provide juvenile offenders a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" to the "rare juvenile offender whose crime reflects irreparable corruption." *Miller*, 567 US at 479-80 (internal quotation marks omitted); *see White*, 365 Or at 11 (concluding that the petitioner was not procedurally barred from raising his *Miller* claim in a successive petition for post-conviction relief because the "rule that the Court articulated in *Miller*, in 2012, was sufficiently novel, unprecedented, and surprising" (internal quotation marks and brackets omitted)). Although the trial court here had the benefit of the United States Supreme Court's case law at issue when it resentenced defendant, it did not have *White* or *Link*, and, therefore, did not have all of the precedent on which we rely for accepting defendant's premise that *Miller* applies to sentences other than mandatory true-life sentences. It is in significant part because of those changes in, and subsequent application of, that constitutional law that the trial court needs to reconsider defendant's sentence.

between juvenile offenders and adults render juvenile offenders less blameworthy due to "[t]he susceptibility of juveniles to immature and irresponsible behavior," and concluding that the Eighth Amendment prohibits the imposition of the death penalty on juvenile offenders because the penological justifications for the imposition of the death penalty apply with less force to juvenile offenders); *Graham*, 560 US at 71-79 (discussing the penological justifications for sentencing juvenile nonhomicide offenders to life without parole, and concluding that the Eighth Amendment categorically prohibits such a sentence because it deprives those juvenile offenders of the "chance to demonstrate maturity and reform")); *see also Link*, 297 Or App at 132-33 (discussing the Supreme Court's observations in *Roper* and *Graham* about the differences between juveniles and adults).

In *Miller*, the Court concluded that a juvenile homicide offender could be sentenced to life without parole, but the sentencer had "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." 567 US at 479-80. The Court explained that, "given all we have said in *Roper*, *Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon," because such a sentence should be reserved only for "the rare juvenile offender whose crime reflects irreparable corruption." *Id.* (internal quotation marks omitted); *see also Montgomery*, ___US at ___, 136 S Ct at 734 (explaining that *Miller* "did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth'" (quoting *Miller*, 567 US at 472).

In *White*, when the petitioner and his brother were 15-years-old they beat a vulnerable elderly couple in their 80's to death by striking them with their fists and weapons. 365 Or at 18-19. The petitioner petitioned for post-conviction relief, arguing that the 800-month determinate sentence that the court had imposed for the murder of one of the victims is a de facto life sentence that "is subject to

*Miller*'s protections." *Id*. at 3. The post-conviction court dismissed the petition on procedural grounds, and we affirmed. *Id*. at 4. The Oregon Supreme Court first concluded that petitioner's petition for post-conviction relief was not barred on procedural grounds and then it turned to the merits. The court rejected the superintendent's argument that the court "should not extend *Miller* to any term-of-years sentence, no matter how long." *Id*. at 12. The court observed that other "[c]ourts that have grappled with the issue of how lengthy a sentence must be to trigger the protections of *Miller* often reference *Graham*'s instruction that juvenile offenders must retain a meaningful opportunity for release." *Id*. at 14; *see, e.g.*, *State v. Null*, 836 NW2d 41, 71-72 (Iowa 2013) (explaining that it does "not regard the juvenile's potential future release in his or her late sixties after a half century of incarceration sufficient to escape the rationales of *Graham* or *Miller*"); *Casiano v. Comm'r of Corr.*, 317 Conn 52, 79, 115 A3d 1031 (2015), *cert den*, ___ US ___, 136 S Ct 1364 (2016) (concluding that "the procedures set forth in *Miller* must be followed when considering whether to sentence a juvenile offender to fifty years imprisonment without parole").

The court in *White* then pointed out that it was unable to find any "state high court that has held that a sentence in excess of 50 years for a single homicide provides a juvenile with a meaningful opportunity for release." *Id*. at 15 (citing *People v. Contreras*, 4 Cal 5th 349, 369, 411 P3d 445 (2018) (citing cases and noting that "we are not aware of any state high court that has found incarceration of a juvenile for 50 years or more before parole eligibility to fall outside the strictures of *Graham* and *Miller*")). Consequently, the court concluded that "[p]etitioner received a *de facto* life sentence for one murder" and, because it did not appear that the trial court considered how children are different, the court could not "conclude that the trial court's decision reflect[ed] a determination that petitioner [wa]s one of the rare juvenile offenders whose crimes demonstrate[d] irreparable corruption." *Id*. at 18-20. Accordingly, the court reversed and remanded. *Id*. at 20.

Here, based on the reasoning and the cases cited by the court in *White*, we conclude that defendant's sentence of 600-months' imprisonment—50 years—is a de facto life

sentence, such that a *Miller* analysis was required to be undertaken by the sentencing court. *See White*, 365 Or at 14 (citing *Null*, 836 NW2d at 71-72 (a sentence that releases the juvenile offender "in his or her late sixties after a half century of incarceration" is subject to the rationales of *Graham* and *Miller*); *Casiano*, 317 Conn at 79, 115 A3d at 1048 ("*Miller* must be followed when considering whether to sentence a juvenile offender to fifty years imprisonment without parole.")).

Moreover, as in *White*, in this case the sentencing court found that defendant's crimes were heinous, and it focused almost exclusively on the nature of the crimes to justify the imposition of a 600-month sentence. However, this record does not convince us that, in crafting that sentence, the sentencing court's decision reflects a determination that defendant is one of the rare juvenile offenders who is so irreparably corrupt and incapable of rehabilitation that he deserves to be deprived of any meaningful life outside of prison walls. *See Montgomery*, ___US at ___, 136 S Ct at 736 (discussing "*Miller*'s central intuition—that children who commit even heinous crimes are capable of change").

In sum, defendant has spent nearly 30 years of his life behind bars and, by all accounts on this record, has been a model prisoner. After 50 years, defendant will be released and in his late 60's. The record before us does not convince us that the court considered the evidence presented about the unique qualities of youth and whether defendant is "capable of change." *Id*.; *see Link*, 297 Or App at 157-58 (concluding that a "court cannot impose the state's most severe penalties on a juvenile offender without regard for the unique qualities of youth that might make imposition of that sentence inappropriate").

Because the sentencing court's decision does not reflect that it took "into account how children are different, and how those differences counsel against irrevocably sentencing [defendant] to a [de facto] lifetime in prison," we conclude that defendant's sentence violates the Eighth Amendment. *Miller*, 567 US at 480.[5] Accordingly, we

_____

[5] We also note that our conclusion in this case is consistent with state legislation, Senate Bill (SB) 1008 (2019), that was enacted in the wake of *Miller*.

reverse defendant's 600-month sentence and remand for resentencing.

Reversed and remanded for resentencing.

---

*See* Or Laws 2019, ch 634, §§ 24, 25 (prohibiting life sentences without parole for juvenile offenders, requiring the court to consider the specific attributes of youth, and providing for parole eligibility after a juvenile has served 15 years of imprisonment). However, the Legislative Assembly subsequently passed Senate Bill (SB) 1005 (2019), which excluded those juveniles whose cases are remanded for a new trial or resentencing. *See* SB 1005 (2019) ("[S]ections 24 and 25, chapter 634, Oregon Laws 2019 (Enrolled Senate Bill 1008) *** do not apply to persons who were originally sentenced before January 1, 2020, and who are subsequently resentenced on or after January 1, 2020, as the result of an appellate decision or a post-conviction relief proceeding or for any other reason.").